27  451
119  322

# CHARLES McLAUGHLIN *v.* CESAR PIATTI, LIBE-RATA PIATTI, AND DANIEL MURPHY.

SALE OF CHATTELS.—If goods are sold (while mingled with others) by number, weight, or measure, the sale is incomplete, and the title remains in the seller until the bargained property is separated and identified.

IDEM.—A sale of a chattel cannot apply to any article until it is clearly designated, and its identity ascertained.

SALE OF A GIVEN NUMBER OF CATTLE RUNNING IN A LARGER HERD.—A sale of a given number of cattle, then running in a herd of a larger number, is an executory contract, and does not apply to any particular cattle until the number sold have been separated from the herd.

BILL IN EQUITY TO ENFORCE SALE OF PERSONAL PROPERTY.—As a general rule Courts of equity do not enforce the specific performance of contracts for the sale of personal property. When such contracts are enforced by Courts of equity, it is not upon the ground of the insolvency of the defendant, but because the character of the property is so peculiar in itself, or its connection with the complainant's business is such that no adequate damages could be given at law.

IDEM.—A bill in equity will not lie to enforce the specific performance of a contract for the sale of cattle not possessing any especial value, except as merchandise.

ACTION FOR CLAIM AND DELIVERY OF PERSONAL PROPERTY.—The action for the "claim and delivery of personal property" under our practice, is at least commensurate with the action of detinue at common law.

BILL OF SALE OF PART OF A HERD OF CATTLE.—A bill of sale of a given number of cattle—part of a herd running on the seller's ranch—giving the purchaser the right to select the number sold and take the same immediately, gives to the purchaser the right, after demand and refusal, to recover possession of the entire herd in an action at law, and then select the number purchased, and return the residue to the seller.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Hoge & Wilson*, and *William T. Wallace*, for Appellant Murphy, and *S. O. Houghton*, for Appellants Cesar and Liberata Piatti.

This bill is brought to enforce the specific performance of an *executory contract*, for the sale and purchase of personal property, to wit: five hundred head of cattle, to be selected by the purchaser out of a much larger herd.

It appears upon the face of the bill, and is so found by the referee, that the five hundred head were not, at the time of the alleged contract, and have never been selected or segregated from the main herd of which they were a part. No property or interest whatever in any specific cattle passed, therefore, to Baker, under whom the complainant claims.

The contract is executory. The complaint is based entirely on the complainant's right to a specific performance of that contract as alleged. If this were not so, we should be at a loss to know for what purpose he has sought the aid of a Court of equity. The ordinary remedies at law would afford him, otherwise, all the relief desirable, inasmuch as upon his

own showing upon the face of his bill, the property was in the possession of the Piattis at the time of the execution of the contract, and so remained at the commencement of the suit and the rendition of the decree.    The whole form and theory of the bill and its prayer, manifest its character and purpose.

That this contract is merely executory, and that no property in any specific cattle passed under it to Baker, (if such a proposition needs authority,) we cite the cases of *Crowfoot* v. *Bennett*, 2 Coms. 258 ; *Hutchinson et al.* v. *Hunter*, 7 Barr's Penn. R. 140, and cases there collected ; *Wood* v. *McGee*, 7 Ohio, 467 (side paging 127) ; *Simmons* v. *Swift*, 5 Barn. & Cress. 857 (11 E. C. L. 712) ; Story on Sales, pp. 197, 198, and following—271 and following.

We think we may safely assert that no Court of equity has ever decreed the specific performance of an executory contract for the sale of mere personalty, of the nature and description of the one set up in the complaint in this case.

The cases in which Courts of equity decree specific performance of contracts in relation to personal property are very rare and exceptional—and in all of them there were peculiar reasons for the interposition of equity ; there was either no mode of getting at the damages in an ordinary action of law, or else the damages when recovered would not afford a complete and adequate remedy.  (2 Story's Eq. Jur., Section 717, and following.)

Story, in the section above cited, lays it down that the true foundation of the rule for decreeing specific performance of any contract is, that " damages at law may not in a particular case afford a complete remedy."

The rule is not founded upon the idea that the party may not from the insolvency of the vendor be enabled to collect his judgment for damages, upon the breach of the contract, but that damages themselves when ascertained and collected would not afford a complete remedy ; or in other words, because the damages, if ascertainable in a suit at law in the particular case,

would from some peculiar quality or character in the thing itself, afford an inadequate remedy.

The general rule undoubtedly is not to entertain jurisdiction in equity for a specific performance of agreements respecting goods, chattels, stock, choses in action, and other things of a merely personal nature.

The exceptions to the rule, according to all authority, are rare and peculiar. The case made in this complaint falls within none of the exceptions. The property in question is stock—live stock—five hundred head of cattle—the value easily and certainly ascertained. Compensation in damages for the breach of such a contract, or for a failure in either party to carry it out, would furnish a complete and satisfactory remedy. To hold such a case as this not to be within the rule would be to obliterate the rule itself with its exceptions.

The only ground for appealing to equity for relief is an alleged inability on the part of the defendant, Cesar Piatti, to respond in damages, and that denied by the defendant Murphy, not proved, and not so found by the referee. This is sometimes a ground *for injunction* to restrain a trespass, but even then a very doubtful one. The opinion of Chancellor Kent in *Watson* v. *Hunter*, 5 John. Ch. R. 172, etc., being the other way.

A Court of equity may very well restrain an irresponsible person, in a case of tort, from committing irreparable injury—from the very destruction of the estate involved. (*McMillan* v. *Richards*, 9 Cal. 419.) The doctrine has no application to a case of this character. If a want of pecuniary responsibility in a Court of law were a ground of equity jurisdiction in cases of bills for the specific performance of agreements, it is strange that the text books and adjudged cases are not full of it. The books do not attempt to place the equity jurisdiction in such cases upon any such ground. Indeed, such a doctrine would draw to equity the jurisdiction of all matters of contract, always supposed to belong to the exclusive cognizance of the ordinary Courts of law. The jurisdiction would be measured by and depend upon the solvency or insolvency of the parties,

and equitable relief administered or refused accordingly. Even if the law was not clearly otherwise, the allegation in this case is altogether insufficient.

*Cook & Hittell*, for Respondent.

In regard to whether the contract was executed or not, we cite the case of *Clark* v. *Rush*, 19 Cal. 393, which, we think, fully decides the question. McLaughlin's assignor, having been placed in the actual possession of the property, was in a position to select his number from the whole herd; his having left temporarily before making such selection, and being refused permission to re-enter the premises, cannot put him in a worse condition than if he were in the joint possession with the Piattis. The moment he took such possession, it was possession of the entire herd. The Piattis had nothing further to do in the premises; the contract was fully executed on their part. (*Pooley* v. *Budd*, 14 Beav. 34.) The doctrine that no property passes so long as anything remains to be done, does not apply, nor can a case be found making it applicable in a case like the present. The reason for the rule does not exist in this case, and the contract having been thus executed, could not, by the wrongful acts of the Piattis, be exchanged to an executory contract. The facts stated in the complaint in this action are the usual facts stated to procure a partition of personal property, as contradistinguished from a specific performance.

What difference can it make to the appellants' rights that Baker did not segregate the cattle? It is true that his agent was let into joint possession of the main herd; but it does not anywhere appear in the case, as the late opinion would seem to imply, that an offer or opportunity was given him to select the five hundred head, and certainly no offer was ever made to McLaughlin. The truth of the matter is exactly what it would be in any other case where a person is owner of the undivided portion of a chattel, or rather owner of an undivided certain number of a larger number of chattels, and wants a partition. He is entitled to a partition, and the common law

is not pliant enough to afford him an adequate remedy. The adverse party in possession is, in a sense, a *trustee* for him, and he can enforce his equitable rights. (See 3 Parsons on Contracts, Boston, 1864, 364, note *t*; *Pooley* v. *Budd*, 14 Beav. 44; 7 Eng. L. & Eq. 229.)

*Campbell, Fox & Campbell*, also for Respondent.

The first question to be considered, is—was the contract which is the basis of this action an executory contract? To a limited extent, and perhaps we may say, in a purely technical sense, it was executory. But it seems to us, that in all these points wherein the defendants would have any just or legal right to intervene, it was an executed and not executory contract. It was certainly executed in so far as that the defendants had actually received the entire consideration of the sale made by them to our vendors. All the service which Baker was to render in consideration of the purchase of these cattle, had been rendered. It was executed in so far as that the defendants had deliberately, and in the most solemn manner, complied with all the forms of law in making, executing, and delivering the written evidence of the sale and of the transfer of the title to the property. It was executed in so far as that the defendants had actually delivered to their vendee the possession of the property sold—not the possession in severalty of the five hundred head of cattle, but the joint possession with them of the entire herd from which the five hundred head was to be taken. It was executed in so far as that the defendants, vendors of the property, had nothing further either to receive or to do in the premises. The only act undone, the only thing unexecuted, was the selection and severance of the five hundred head from the balance of the herd, and this was to be done, not by the vendors, nor by the joint action of vendors and vendee, but at the convenience of and by the vendee alone, who had been let into possession for that purpose, and to whom the right had been given to make that selection without let, hindrance, molestation, interruption, assistance, or choice of or from the vendors. Certainly this

contract has been so far executed as that it was a perfect and binding sale and transfer of the title to the property.

But even if this contract is in any sense an executory con-.tract, we insist that it is such an one as that its specific performance may properly be enforced by decree in equity, and that the circumstances are such as to give Courts of equity jurisdiction in the premises, and to entitle us to equitable relief. The fundamental principle which underlies the whole doctrine of specific performance is, that where a fair, *bona fide* contract has been so far executed, that by reason of its partial execution alone, or in conjunction with other changes which have subsequently taken place, the parties cannot be restored to their original condition or circumstances, or that the failure of one party to comply with its condition would *operate as a fraud* upon the other who was not in default, Courts of equity will interfere and decree a specific performance of the contract. The question as to whether or not the failure would operate as a fraud, enters quite as much into the consideration of the Court in determining the jurisdictional point as does the question whether or not the breach of contract can be compensated in damages. (See *Arguello* v. *Edinger*, 10 Cal. 150, where this subject is discussed at some length.)


By the Court, Shafter, J.

This case comes into this Court by an appeal taken by the defendants from a decree of the Fourth District Court, rendered against them and in favor of the complainant.

The complaint sets out that on the 18th day of December, A. D. 1858, the defendants, Cesar Piatti and Liberata Piatti, were and ever since have been, husband and wife; that on that day they, for the consideration of fifteen thousand dollars, duly signed, acknowledged and delivered their bill of sale to E. D. Baker, as follows, viz:

"*Know all men by these presents*, that we, Cesar Piatti, and Liberata Piatti, his wife (late Levinia Bull,) for and in consid-

58

eration of the sum of $15,000 to us in hand paid, the receipt whereof is hereby acknowledged, have granted, bargained and sold to E. D. Baker, to whom we make said acknowledgment of the receipt of said money, five hundred head of cattle, part and parcel of our stock of cattle now running on the Laguna Ranch, in Santa Clara County, to be selected and chosen by him or his agents out of said stock or herd, at his choice, hereby guaranteeing to him the right and possession thereof, and authorizing him to select and take the same immediately, fully and absolutely as of his own right and property.

" Given under our hands this 16th day of December, 1858.

" Liberata Piatti,
" Cesar Piatti.

" Witness : R. E. Fulton."

" State of California, } ss.
" County of Santa Clara,

" On this 18th day of December, A. D. 1858, before me, Thomas Bradley, a Notary Public in and for said county, personally appeared Cesar Piatti and Liberata Piatti, his wife, personally known to me to be the individuals described in and who executed the annexed instrument, as parties thereto, and acknowledged to me that they executed the same freely and voluntarily, and for the uses and purposes therein mentioned ; and the said Liberata Piatti, wife of the said Cesar Piatti, having been by me first made acquainted with the contents of said instrument, acknowledged to me, on an examination apart from and without the hearing of her husband, that she executed the same freely and voluntarily, without fear or compulsion, or undue influence of her husband, and that she did not wish to retract the execution of the same.

" In witness whereof I have hereunto set my hand and affixed my official seal the day and year first above mentioned.

[L. s.]            " Thomas Bradley, Notary Public."

That by the terms of the bill of sale and as a matter of fact, they then and there sold said cattle to Baker, and he became the owner thereof.

That on the 20th of August, A. D. 1859, by instrument in writing on the back of the bill of sale, transferred the five hundred head of cattle over to McLaughlin, the complainant, for five thousand dollars, of which instrument the following is a copy :

" For five thousand dollars value received I hereby assign and transfer and sell, and set over to Charles McLaughlin the cattle sold to me in and by the within bill of sale, and authorize him for himself to have, claim and keep the same in full ownership, having all the right of the same vested in me by the above bill of sale, without any recourse on me, on account of said sale or otherwise, which the said McLaughlin hereby accepts.

" August 24, 1859.                              E. D. Baker."

That at the time of the bill of sale, the five thousand head were and are now (to wit : at the commencement of this suit) part and parcel of a large herd of cattle of the same kind on Laguna Ranch, and were at the time of sale in possession of defendant, Cesar Piatti, as the separate property of said Liberata, and are now on said ranch occupied by said Liberata and Cesar, and in their possession.

That at the time of the execution of the bill of sale, the said defendants placed Baker in joint possession with them of the main herd, until a division of said main herd could be made, and said Baker could select and segregate said five hundred head ; that Baker, by his agent, continued in such joint possession for about five months, when, after a temporary absence at San Francisco, said agent on returning was refused possession by the said defendants ; that there has never been a segregation of said five hundred head from said main herd.

That at the time of the bill of sale, and since, the main herd was, and has been the separate property of the said Liberata, derived by her as a portion of the estate of a former husband, one Fisher, now deceased ; that said defendant, Murphy, claims to be the owner of said five hundred head, by some

pretended sale from said Liberata, but that the same is fraudulent and void; that said Murphy never paid anything for such pretended interest, but that it was a sham sale, made to hinder, delay and defraud creditors.

That the common property of Cesar and Liberata, and the separate property of Cesar, without the property in question, is insufficient to satisfy complainant's demands for damages, in case he cannot obtain a division of said main herd, and the delivery of said five hundred head, under the terms of the bill of sale and assignment; and that if complainant cannot obtain such division and delivery as aforesaid, he will suffer irreparable injury by reason of inability of defendant, Cesar, to respond in damages for breach of warranty in said bill of sale, and the non-liability of the said Liberata on the warranty, she being a married woman.

That, on refusing Baker's agent to re-enter into the joint possession as aforesaid, the said defendants have conspired and confederated to cheat and defraud the complainant, under pretense of said fraudulent sale to Murphy, out of said five hundred head of cattle and the equivalent thereof in damages; and that since the execution of the bill of sale, as complainant is informed, said defendants have sold about three hundred head of said herd, without the knowledge or consent of Baker or of complainant, and are endeavoring to and will sell the balance of the herd to innocent purchasers, etc.; that said ranch being in an isolated location and sparsely settled district, the said main herd may be easily driven off and sold to innocent purchasers during the pendency of this action, unless a receiver be appointed by the Court to take charge of such five hundred head, as may be selected and chosen by the complainant, and the defendants be restrained in the meantime from selling or otherwise disposing of said main herd of cattle; that at the time of bill of sale, and now, said five hundred head were and are worth fifteen thousand dollars; that on the 3d day of September, 1859, complainant demanded of Cesar and Liberata said five hundred head of cattle, as per terms of the bill of sale, they knowing of his ownership, and they

refused and still refuse to deliver the same, and deny complainant's right to any portion of the same, although there were then and now are over one thousand head on hand of stock, out of which Baker had a right to select, and the same now remain on said ranch in the possession of said Cesar and Liberata; that Baker and the complainant have fully kept and performed the agreement on their part, and the said defendants Cesar and Liberata have wholly disregarded their covenants and agreements, etc.

That complainant is remediless, and can only be protected by the equitable interposition of the Court, etc. The complainant therefore prays that the main herd may be divided by the decree of the Court, and that he be adjudged to be the owner and entitled to the possession of five hundred head of cattle of said large herd on said ranch, to be selected and chosen by the complainant out of said main herd, and that said Liberata and Cesar be adjudged and decreed to specifically perform all and singular their covenants and stipulations as specified in said bill of sale, and for a receiver to take charge of five hundred head to be selected and chosen by the complainant, and in the meantime for an injunction, etc.; and that the Court decree the complainant to be entitled to and that the receiver deliver over to him such five hundred head of cattle, and that the injunction be made perpetual, and for such other relief, etc.; and also that the Court decree that the pretended sale to the defendant Murphy was fraudulent and void, and was intended to hinder and delay the creditors of the other defendants and to defraud this plaintiff, and that said Murphy has no interest in or to said stock.

Upon this bill and in pursuance of the prayer, a receiver was appointed, etc., and injunction issued, etc. The defendant Murphy demurred to the bill on the following grounds, viz:

" 1. That this Court, as a Court of equity, has no jurisdiction of the subject matter of this action.

" 2. That there is a defect of parties defendant; that is, in

uniting the defendant with the defendants Piattis in an action for a specific performance of an agreement between the plaintiff and said Piattis, to which the defendant (Murphy) was not a party.

"3. That the plaintiff has not the legal capacity to sue this defendant to set aside the alleged fraudulent sale and conveyance to this defendant referred to in the complaint, because said plaintiff is a subsequent purchaser with notice, and because he is not a judgment creditor of said Piattis, or of either of them.

"4. That several causes of action have been improperly united, viz: a specific performance upon an executory agreement between said plaintiff and said Piattis, and to set aside an alleged fraudulent conveyance to this defendant.

"5. Because said complaint is multifarious, and unites separate and distinct grievances against separate and distinct persons.

"6. That the said complaint does not state facts sufficient to constitute a cause of action against any of said defendants.

"7. That said complaint does not state facts sufficient to constitute a cause of action against this defendant, either separately or jointly with said Piattis, or either of them."

The demurrer having been overruled, the defendants answered separately. The case went to a referee and on his special report of the facts judgment was entered for the plaintiff.

There is a diversity of questions raised by the record, all of which have been fully and learnedly discussed by the counsel of the respective parties, but the only points which we find it necessary to determine in order to dispose of the appeal upon its merits, are the following:

First—In our judgment the contract set up in the complaint was executory at the commencement of the action; that is to say, the plaintiff at that time had not, as the assignee of Baker, become the owner in severalty of any part of the herd of cattle mentioned in the bill of sale. It is a fundamental

principle pervading everywhere the doctrine of the sales of
chattels, that if goods be sold (while mingled with others) by
number, weight, or measure, the sale is incomplete, and the
title continues with the seller until the bargained property is
separated and identified.   The reason is that the sale cannot
apply to any article until it is clearly designated and its iden-
tity ascertained.   In the case under consideration, it could not
be said with certainty that any particular five hundred head
of cattle belonged to Baker or the plaintiff as his assignee,
until a severance of that number from the herd from which
they were to be taken.   If a part of that herd had died, five
hundred head surviving, the loss would neither in whole nor
in part have fallen upon Baker. (*Hutchinson* v. *Hunter*, 7
Barr. 140 ; *Woods* v. *McGee*, 7 Ohio, 466 ; *Crowfoot* v. *Bur-
nett*, 2 Comst. 258 ; Story on Sales, Sec. 296 ; *Horr* v. *Baker*,
6 Cal. 489—8 Cal. 603 ; *Adams* v. *Gorham*, 6 Cal. 68.)   These
principles are so well settled that no beneficial purpose would
be subserved were we to pursue the discussion further.

Second—As a general rule, a bill in equity does not lie to
enforce the specific performance of a sale of personal prop-
erty.   There are exceptions to the rule, but the case made by
the plaintiff is not within them.   The equitable jurisdiction
to enforce specific performance in this class of contracts is not
based either in whole or in part upon the accident of insol-
vency, but upon the general principle or truth that in the
excepted cases there can be no adequate compensation in dam-
ages at law, the solvency of the defendant being given.   This
consequence sometimes results from the fact that the thing
bargained for is of unusual distinction or curiosity, or from
the fact that the commodities sold or contracted for are so
related to the situation or to the business arrangements of the
purchaser that non-fulfilment would greatly embarrass and
impede him in his plans and prospects—threatening or involv-
ing a loss of profits which a jury could not correctly estimate ;
or to cases where the contract is not to be presently executed,
and the like. (*Taylor* v. *Neville*, cited in 3 Atk. 384 ; *Adderly*
v. *Dixon*, 1 Sim. and Stu. 610 ; 1 Sto. Eq. Juris., Sec. 718.)

In this case the contract was to be, or at least might have been, executed by Baker immediately after it was concluded upon; and he furthermore had an opportunity to exercise his right of selection and segregation at the time when he was let into joint possession of the herd with the vendor. The cattle were without special value, in themselves considered, nor does it appear that if they had been segregated by Baker and taken into possession that they would or could have been put to any other than the most common uses. On the face of the complaint, as well as on the face of the referee's report, the cattle bargained for were in no manner distinguishable from merchandise at large. (*Buxton* v. *Lister*, 3 Atk. 382.) To uphold the judgment appealed from would therefore not only be in contravention of all the cases, but in subversion of the principles upon which the equity jurisdiction is founded.

Third—But while it is insisted on behalf of the respondent that, if the contract be as yet unexecuted, its full execution can be compelled in this proceeding, yet the chosen position of counsel is that the complaint discloses a contract fully executed—nothing remaining to be done either by vendors or vendee in order to vest a title in the latter to a band of five hundred head, distinguished and separate from the larger herd to which they originally belonged. As has been stated already, we do not consider that the complaint carries the contract which it sets forth, to that pitch in the matter of execution; and it results that in our opinion the complaint can be made to take on no other aspect than that of a bill brought to compel the specific performance of a contract for the sale of personal property, all the terms of which contract have not as yet been fulfilled—and here the jurisdictional obstacle, previously named, is encountered. But on the facts of this case, the plaintiff had a speedy and perfect remedy at law. The plaintiff, as the assignee of Baker, had the right to the immediate possession of the whole herd for the purpose of making a selection of his five hundred head. In pursuance of that right the defendants were requested to deliver the whole herd to the plaintiff, but refused so to do. We have here all the

grounds upon which the action of detinue has been familiarly planted for ages.   In that form of remedy the plaintiff could have recovered possession of the whole herd—selected his five hundred head from it and returned the residue of the cattle to the Piattis.   Our action for the " claim and delivery of personal property," considered as a remedy, is at least, commensurate with the action of detinue at common law.   But if the plaintiff could not have availed himself of this remedy, and whether he could or not we have no occasion to decide, yet it is beyond controversy, that he could have maintained an action upon the contract for the recovery of damages, which relief would have been " adequate and complete " in the fulness of the meaning borne by those terms in equity law.

The view we have taken of the case makes it unnecessary to consider the other questions discussed by counsel.

The judgment is reversed and the Court below is directed to enter judgment in favor of the defendants.

Mr. Justice SAWYER expressed no opinion.