[Civ. No. 2727. Second Appellate District, Division One.—March 13, 1920.]

## GEORGE A. H. FARMER, Appellant, v. ERLE M. LEAF, Respondent.

[1] SALES — PROPERTY NOT SEGREGATED — WHEN TITLE PASSES.—The question as to when title to personal property not in existence or capable of being segregated at the time of the making of the contract passes to the vendee depends many times upon the intention of the parties to be determined from their agreement. If the agreement of purchase expressly contains provisions covering the matter, the agreement controls, and title may pass to a thing not prepared by the vendor in condition for delivery, perhaps only partially manufactured by him. On the other hand, where the intention of the parties regarding the matter cannot be ascertained from the agreement, title will not pass to the vendee until the thing is identified and ready for delivery and perhaps tendered.

[2] ID.—SALE OF PRUNE TREES—EVIDENCE OF SEGREGATION—EXCESS. In this action upon a promissory note given incidental to and as a part of a further agreement made between the parties respecting the sale of a certain lot of prune trees, the evidence showed that prune trees of the required number, size, and condition had been segregated and set apart for the defendant. The mere fact that there was an excess of other trees of the same kind, but of insufficient size, or perhaps lacking in vitality, accompanying the lot, did not establish a condition showing such lack of segregation as would reserve in the plaintiff the title to the property.

[3] NONSUIT—APPEAL—EFFECT GIVEN TO TESTIMONY.—In reviewing a judgment of nonsuit, the appellate court is required to give the strongest effect to the testimony of the plaintiff in sustaining the cause of action alleged.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank G. Finlayson, Judge. Reversed.

The facts are stated in the opinion of the court.

1. Intention of parties as test of passing of title under contract of sale of goods to be manufactured or produced, note, 50 L. R. A. (N. S.) 113.

When title passes to goods sold from mass, note, 9 Ann. Cas. 26.

William H. Fuller and F. J. Schuhl for Appellant.

James E. Shelton and H. G. Bockius for Respondent.

JAMES, J.—Plaintiff was nonsuited in this action, the trial court holding that the evidence introduced in support of the cause of action set out in the complaint was insufficient. The appeal is from the judgment which followed.

The action was upon a promissory note given incidental to and as a part of a further agreement made between the parties respecting the sale of a certain lot of prune trees. The note, and agreement signed by both parties to the action, was in the following terms:

"$510.00.                    Porterville, Cal., April 1, 1915.

"On or before April 1, 1916, for value received, I promise to pay to the order of George A. H. Farmer at the First National Bank of Porterville, in U. S. gold coin, the sum of five hundred ten dollars ($510), with interest thereon in like coin, at the rate of seven per cent per annum from date until paid. Interest payable semi-annually. In case of collection by law, I agree to pay reasonable counsel fees. The payment of this note is contingent upon the delivery to the undersigned by said George A. H. Farmer of certain tragedy prune trees, in accordance with the provisions of an agreement of even date herewith, executed by the undersigned and approved by said George A. H. Farmer, to which agreement reference is hereby made for full particulars.

"(Signed)   ERLE M. LEAF."

"This is to certify that the undersigned, Erle M. Leaf, did on the sixth day of January, 1915, order from George A. H. Farmer of Porterville, California, three thousand (3000) Tragedy prune trees, four to six feet in height; two thousand (2000) of said trees at the rate of eighteen cents ($.18) per tree and one thousand (1000) of said trees at the rate of twenty cents ($.20) per tree, making a total of five hundred sixty dollars ($560). That I have paid said George A. H. Farmer the sum of fifty dollars ($50) leaving a balance unpaid of five hundred ten dollars ($510).

"That said trees were to be delivered to me on or before April 1, 1915, at Porterville in the county of Tulare, state of California, but owing to circumstances I could not accept said trees at said time and will not be able to accept said trees until on or before April 1, 1916.

"I herewith deliver to said George A. H. Farmer my promissory note bearing date April 1, 1915, in the sum of five hundred ten dollars ($510), with interest on same at seven per cent per annum and the said George A. H. Farmer is to hold and keep said trees and take care of the same in a husbandrylike manner until on or before the 1st day of April, 1916, the time of delivery, with no expense to me.

"The said promissory note is to be paid as therein stated on or before April, 1916.

"It is understood and agreed, that the consideration of the execution and delivery to said George A. H. Farmer of said promissory note mentioned above is the delivery to the undersigned on or before April 1, 1916, of said three thousand (3000) Tradgedy prune trees at least ninety-two and one-half (92½) per cent of said trees to be alive and in perfect condition and all of said trees to be guaranteed by said George A. H. Farmer to be true to name. Said trees are to be delivered on the order of the undersigned on April 1, 1916, or at any time prior thereto, at the option of the undersigned.

"Dated, Los Angeles, California, May 1, 1915."

The evidence showed that about April 1, 1915, as recited in the contract just quoted, defendant placed his order with the plaintiff for three thousand prune trees of the kind and size specified. Plaintiff had not so many trees in stock, but immediately (about April 1, 1915) proceeded to fill the order by securing from persons in the business the trees required, placing an order for some in the state of Oregon and for some in California. As to whether he had gathered together the requisite number of trees by May 1, 1915, the date of the making of the supplemental agreement, is not clear; but it is made entirely clear by the evidence that the trees were secured and placed in two separate yards and tied in bunches ready to be delivered prior to April 1, 1916. We have said that they were placed in a condition to be delivered, although it is the contention of the respondent, with whom evidently the trial judge agreed, that the trees never were so segregated and made ready for delivery as to cause the title to pass to the vendee. Practically the only contention made here in support of the judgment of nonsuit is that the plaintiff has mistaken his remedy; that the title did not pass to the vendee, and that therefore the plaintiff could not sue for the purchase price, but should have declared for

damages under provisions of section 3311 of the Civil Code. It is admitted by respondent that if title had vested in the vendee, then this action in the form as determined by the complaint was properly brought. We will make particular reference, therefore, first to the evidence showing the manner in which the trees plaintiff had secured for the purpose of filling the order of the defendant were handled. Plaintiff testified that he had collected in the manner hereinbefore indicated about four thousand prune trees in his yards for the purpose of securing for defendant the three thousand of the proper height and the requisite percentage of live trees; that the entire lot of trees was procured for the purpose of filling this order only. He testified on the subject, in part, as follows: "A₃ I mean that the trees that I had set aside of the three thousand three hundred to three thousand eight hundred were for Mr. Leaf and no one else. The Court: Then in addition to that you added about two hundred? A. Another two hundred trees. Q. Making between three thousand five hundred and four thousand? A. Possibly. Q. So that you were going to select and deliver to him three thousand out of the three thousand five hundred to four thousand that you could make selection from? A. Yes, sir. If I might explain the trees were bunched together in lots of twenty-five and I guarantee ninety-two and one-half per cent of these to be alive; without taking them out of the ground I couldn't tell exactly how many were dead in each bunch, so I estimated and thought possibly, to be safe, I had bought another two hundred trees. I guaranteed the ninety-two and one-half per cent to be alive at that time." He further testified that the total number of prune trees out of which the order of Leaf was to be filled were kept separate from other stock; that he had no other prune trees in stock; that he continued to keep the entire lot of trees separate and ready for delivery, and that they were in his yards in such condition, properly cared for, on the first day of April, 1916, and for six months thereafter. However, in February of 1916, defendant, having sold the land upon which he had intended to plant the trees, wrote to the plaintiff a letter containing the following phrase: "It is my desire to dispose of the trees without incurring any loss, and I shall expect to do this. If you are able to sell them for money on this basis, I will be glad to have you do so." On March 7th of the same year, defendant wrote the plaintiff again, stating: "In

regard to the Tragedy prune trees, I beg to again advise you that I wish to secure such a price for them as will net a sufficient amount to cover the cost to me. You are hereby authorized to sell any of this lot of trees on the above terms. . . . I have sold all the land which I owned in Tulare county on which I originally intended to plant the trees, and accordingly, as you see, have no possible use for them.'' Having thus been apprised of the position of the defendant, the plaintiff on March 15, 1916, wrote to the defendant as follows: ''You are hereby notified that I hold, subject to your order and in accordance with the terms of our agreement dated the first day of May, 1915, three thousand Tragedy prune trees; that of said three thousand Tragedy prune trees so wanted by you, over ninety-two and one-half per cent are alive and in perfect condition, and furthermore, that I hereby guarantee the said trees to be in perfect condition and true to name. That said above described trees are now ready for delivery to you and subject to your order of disposition. The trees are in my care, and I shall be pleased to hear from you and learn your wishes.'' A letter from the defendant, under date of March 17, 1916, followed. This letter was as follows: ''In connection with the Tragedy prune trees, I beg to again suggest that, looking at the matter purely from your standpoint, that it will be to your interest to make an effort to dispose of these trees. Owing to the hard times which have prevailed during the last two years, I was compelled to dispose of the land at a considerable sacrifice, and consequently will be compelled to ask for a considerable extension of time on my obligation to you in case the trees are not disposed of. I trust that you will still be able to dispose of the trees to our mutual advantage.'' Plaintiff continued to hold the trees and cared for them for six months subsequent to April 1, 1916. Defendant gave no further direction regarding the trees and they subsequently died in the hands of the plaintiff.

[1] The question as to when title to personal property not in existence or capable of being segregated at the time of the making of the contract of purchase passes to the vendee depends many times upon the intention of the parties to be determined from their agreement. If the agreement of purchase expressly contains provisions covering the matter, the agreement, of course, controls, and title may pass to a thing not prepared by the vendor in condition for delivery, per-

haps only partially manufactured by him. On the other hand, where the intention of the parties regarding the matter cannot be ascertained from the agreement, the courts have enforced the general rule that title will not pass to the vendee until the thing is identified and ready for delivery and perhaps tendered. (Benjamin on Sales, 7th ed., sec. 308 et seq.) Section 1141 of the Civil Code expresses the general rule on this subject: ''Title is transferred by an executory agreement for the sale or exchange of personal property only when the buyer has accepted the thing, or when the seller has completed it, prepared it for delivery, and offered it to the buyer, with intent to transfer the title thereto, in the manner prescribed by the chapter upon offer of performance.'' [2] We think here that the evidence showed that prune trees of the required number, size, and condition had been segregated and set apart for the defendant; that the mere fact that there was an excess of other trees of the same kind, but of insufficient size, or perhaps lacking in vitality, accompanying the lot, did not establish a condition showing such lack of segregation as would reserve in the plaintiff the title to the property. Further than that we think that the terms of the supplemental agreement accompanying the promissory note were evidence of the intent of the parties to acknowledge a completed sale, and especially is this intent emphasized by the letters written by defendant to the plaintiff wherein he requested the plaintiff to sell the property for his benefit. [3] In reviewing the judgment of nonsuit, we are required to give the strongest effect to the testimony of the plaintiff in sustaining the cause of action alleged. There is nothing in that evidence to show that the plaintiff failed to perform all of his obligations, and the evidence does show that the defendant refused to accept the trees according to the agreement made by him. Our conclusion is that the plaintiff was entitled to maintain the action.

The judgment is reversed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 10, 1920.

All the Justices concurred.