[Civ. No. 6416. First Appellate District, Division Two.—February 6, 1929.]

SUN–MAID RAISIN GROWERS OF CALIFORNIA (a Corporation), Respondent, v. W. F. JONES, as Sheriff, etc., Appellant.

B. M. Benson for Appellant.

Harry M. Creech and Harris, Johnson, Willey & Griffith for Respondent.

KOFORD, P. J.—Action in conversion; plaintiff claimed to be the owner of fourteen tons of raisins grown during 1926 on land owned by one George Betel. These raisins were seized by the defendant sheriff while they were in sweat boxes on the land of Betel; defendant was acting under a writ of attachment in an action entitled *Dauer* v. *Betel,* and the raisins were seized as the property of Betel. In April, 1923, Betel had signed a contract with plaintiff's assignor commonly known as the "raisin contract."

The first and chief point raised by appellant is that under this instrument the title to the raisins attached by appellant was at that time in Betel, the grower and defendant in the attachment suit, and was not in the plaintiff who recovered judgment for conversion in the trial court.

The contract commenced "Witnesseth: That the buyer (Sun-Maid Raisin Growers, a corporation) does hereby purchase and the seller (Betel) does hereby sell all of the raisin grapes to be produced during the years 1923 to 1937 inclusive . . . " It specified how the raisin grapes should be cured and delivered, how and when they should be paid for by the familiar pooling, marketing, and dividend scheme. It contained a provision for liquidated damages and other relief in case of breach of the agreement. It also contained other

provisions which are much discussed by the parties in their argument upon this appeal. A paragraph greatly relied upon by respondent reads as follows: "This instrument is intended by the parties to pass to and vest in the buyer a present title and right of possession to all of the crops of raisin grapes covered hereby. The buyer shall at all times have the right to enter upon said premises and remove the said crops therefrom; but the right of the buyer to so enter and remove said crops shall not affect the obligation of the seller to pick, cure and deliver the same as above provided."

Appellant concedes that the first part of the paragraph last quoted imports an executed contract of sale under the terms of which a present title passes, but contends that this is overcome by many other provisions in the contract manifesting an intent that title should not pass until delivery. These provisions of the contract include the following: The grapes must be grown, dried, and cured and graded at time of delivery as to quality. Upon delivery an account payment was to be made, the amount thereof to be discretionary with the buyer. The price was to be slightly raised by a bonus for extra quality and reduced for inferior quality. It provides for liquidated damages. It provided, "that if at the time of such delivery there stands of record a crop mortgage covering the crop so delivered, such payments or advances shall be made as directed by request in writing signed by both mortgagor and mortgagee." The buyer could enter and take possession. Crops not to be in existence for thirteen years were sold. Contract terms were to be modified as required by the federal court.

Appellant has cited a large number of cases in which one or more of the last-mentioned contract provisions, or similar ones, have been used by the courts to ascertain that the contracting parties did not intend that title to sold goods should pass at a given time. But none of these cases, nor counsel for appellant, questions that the intention is the guiding rule. Consideration of such contract provisions for the purpose of ascertaining the intention of the parties is resorted to when that intention is not manifested in a clear and more definite way. None of the authorities relied upon by appellant contain, as here, a clear, direct, and express statement to the effect that the parties intend by their writing to pass to and vest in the buyer a present title.

█ Rules of construction are designed and used for the purpose of ascertaining the intent and meaning of the writing as a whole where the intention is not clearly expressed. Where a certain clause is said to indicate a given meaning of the whole contract, the courts are merely stating that such clause reveals that such was the intention of the parties.

█ Here the intention is so clearly expressed as to leave no excuse or reason for construction. If any rules of construction were needed, then the first one requires that all parts of the document be given force and meaning, if that is possible. The contract provisions which appellant points to as showing the intent that title remains in the seller are not all more consistent with title being in the seller than with title being in the buyer, and we do not find that any one of them is so inconsistent as to be entirely irreconcilable. Further construction is not justified until a provision is found impossible of being reconciled with the direct and clear expression of what the parties intended. Therefore, whatever controlling force these various contract provisions might have in the construction of an executory agreement of sale which contained no directly expressed intention, they are not controlling here. In *Turner, Kuhn & Fraser, Inc., v. Jones,* 61 Cal. App. 732 [215 Pac. 1033, 1034], relied upon by appellant, it is said at page 734: "Under a contract of sale the parties may agree when title shall pass. If they expressly do so, their contract controls, even though the subject matter has only a potential existence." (See, also, *Hogue-Kellogg Co.* v. *Baker,* 47 Cal. App. 247 [190 Pac. 493]; *Farmer* v. *Leaf,* 46 Cal. App. 542 [189 Pac. 735]; *Hamilton* v. *Klinke,* 42 Cal. App. 426 [183 Pac. 675]; *Arques* v. *Wasson,* 51 Cal. 620 [21 Am. Rep. 718].) *McLaughlin* v. *Piatti,* 27 Cal. 451, is not to the contrary, nor does it deal with such a clause directly expressing the intent of the parties that title shall pass immediately. There the instrument stated that sellers "granted, bargained and sold" five hundred head of cattle to be selected by buyer out of a certain large herd. The court held the instrument to be executory because the chattels were not identified. This is no more than the rule of Civil Code section 1140. "Not too great stress must be laid upon the use of the words 'sell' or 'buy' or 'sold' or 'bought' by the parties. These words are constantly used as meaning or including contract

to sell or contract to buy.'' (1 Williston on Sales, 2d ed., sec. 262; *Wanee* v. *Thomas*, 75 Cal. App. 238 [242 Pac. 509].) The use of the word "sold" in *McLaughlin*, v. *Piatti, supra*, may be compared with the words "does hereby sell" in the beginning of the raisin growers' contract, but it by no means has any similarity to the clause directly expressing the agreement of the parties that a present title to the raisin grapes shall pass and vest.

We need not in the present case determine the exact time the title passes, so long as it was before the attachment. Title passed when first the raisin grapes became property which could be the subject of ownership and sale. A potential existence of the grapes seems to answer this requirement. (*Arques* v. *Wasson, supra.*) This, of course, was long before the attachment which was levied upon a portion of the crop while in "sweat boxes" undergoing the final curing process. When the grower's creditor, therefore, attached the raisin grapes or the raisins, whichever they were at the time of the levy, they belonged to respondent.

This transfer was not void under Civil Code, section, 3440, because the crop was not capable of delivery. The section only declares transfers without delivery void "if made by a person having at the time the possession or control of the property." "At the time" in this case means when Betel signed the raisin contract in April, 1923. He was not then in possession or control of the raisins or raisin grapes attached in 1926 within the meaning of the section. The section does not require the delivery of growing crops. (*Globe Grain & Mill. Co.* v. *Drenth*, 36 Cal. App. 156 [171 Pac. 821], and cases therein cited.)

The value of the raisins was sufficiently proven by the evidence to sustain the finding and judgment on that issue. The valuation arrived at by the court was based on the lowest price named by the expert testimony, which means that it was based upon the assumption that the raisins were of the lowest quality within the rather detailed description given them in the questions bringing out this testimony. Appellant cannot complain of this.

Appellant raises in this court for the first time the point that respondent, the assignee of the original buyer, Sun-Maid Raisin Growers, a corporation, was not proven by the testimony to come within the contract clause prohibiting

an assignment by the buyer " . . . except to a nonprofit co-operative association . . . etc. . . . or any corporation or organization of a co-operative nature . . . " This point is not available to appellant because not raised in the trial court. On the contrary, appellant at the trial stipulated without reservation that said contract was assigned by the original buyer to respondent. This stipulation dispensed with proof of facts showing a valid assignment. Otherwise we should be disposed to permit the fact to be proven in this court.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 1, 1929, and petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 1, 1929.

All the Justices present concurred.