## EZEKIEL MORRISON

*v.*

## GEORGE WOODLEY.

1. SALE—*when title passes.* If the owner of a large number of railroad ties, lying in dock, sells three thousand of the same, receives payment, and the purchaser afterwards makes arrangement with the keeper of the dock, who is also agent for the vendor, to take charge of the ties, it would seem the title will vest, and the vendor will not be responsible for the subsequent loss of the ties.

2. But if the vendor, after the facts relied on as vesting the title, agrees to take back the ties and let the purchaser have others, in lieu thereof, which he fails to do, he will be liable to the purchaser for the price paid.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. MONROE, BISBEE & BALL, for the appellant.

Mr. A. B. JENKS, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

Appellant and appellee were both residents of Chicago, and each had his place of business there. On the 24th of February, 1870, appellant sold to appellee 3000 railroad hemlock ties, at twenty cents each, and gave him a bill and receipt, in the words following:

"CHICAGO, *Feb.* 24, 1870.

"Mr. George Woodley bought of E. Morrison 3000 hemlock

railroad ties, lying on Foss' dock, Muskegon, free of dockage, and subject to Chicago inspection—ties to be taken off dock at the first of navigation.

"To 3000 hemlock ties, @ 20 cents............ $600.00
                 "Received payment.
                                           "E. MORRISON."

Appellant, at that time, had lying on that dock in Wisconsin, some 7000 to 8000 of that kind of ties, these remaining there under the care of Mr. Fleming, who had bought the ties for appellant, (but who had, as appellant testifies, no authority to sell or dispose of the same,) until May. The appellee wrote to Fleming from Chicago, on the 7th of May, 1870, as follows:

                             "CHICAGO, *May* 7, 1870.

"A. M. FLEMING, ESQ.—Dear Sir: Your telegram is rec'd; have answered; don't ship. There is no market for them now, and every dock is full here; has been three large cargoes docked to-day, and there is no place to put them, here. I expect a place every day, and will send for them at earliest moment. Please see the owners of the dock, and write me what they will charge to let them lay longer; do the best you can for me, as the prospect is that I shall lose money on them under the circumstances. You said only a few of them were in the way. Can't those be hauled and piled on the bank? Please figure as you would were they your own, and write me by return mail. If necessary, I will come over or send a man to move them, and if no other way presents, will send a schooner over after them. Please do all you can for me, and the favor will be duly appreciated. Yours, truly,

                             "GEO. WOODLEY,
                 "256 S. Water st., Chicago."

Subsequently, appellee made some arrangement with the owner of the dock, to avoid the necessity of immediate removal of the ties, and paid $20, either for dockage or to provide for the expense of removing part of the ties, if the dock should be needed for other purposes.

The 3000 ties sold to appellee were never selected or set apart for appellee, or separated from the other ties belonging

13—84TH ILL.

to appellant, and not embraced in this sale. Some time in September, 1870, the whole of these ties (embracing those sold by appellant to appellee) were taken from this dock and used in the construction of the Grand Rapids and Lake Shore railroad, without the knowledge or consent of either appellant or appellee.

Appellant insists, the proof shows it was the intention of the parties that the property in the ties should vest at once in appellee, and that, at least ever after they were put by appellee (as appellant insists) in the care of Fleming, appellant had nothing more to do about these ties, and did nothing more about them, and hence was in no way liable to appellee either for the loss of the ties or for the money he received from appellee. To some members of this court this would seem to be the fair conclusion from the weight of the evidence. To others it seems that the circuit court was right in coming to a different conclusion, from a fair consideration of all the proofs.

It is plain that there is evidence tending to prove, that after all that is relied upon by appellant as vesting the title in appellee, there was a new arrangement made between the parties, by which it was agreed that appellant take back the ties on the dock, and in lieu thereof agreed to let appellee have a like amount of like ties from a quantity of ties belonging to appellant, at another place, a few miles north of the dock at Muskegon, and also tending to show, that instead of letting appellee have his 3000 ties from the latter place, appellant sold and shipped to other parties all the ties he had at that place.

The evidence is contradictory on this branch of the case, and in many other respects, and after a careful examination of all the evidence, we find no sufficient ground for disturbing the judgment.

*Judgment affirmed.*