THE INDIANAPOLIS, PERU AND CHICAGO R. W. Co. v. MAGUIRE.

SUPREME COURT.— *Weight of Evidence.*—The Supreme Court, on appeal, will not set aside the verdict of a jury on the mere weight of evidence, where there is evidence tending to sustain it.

CONTRACT.—*Sale of Personal Property.—Delivery.—Acceptance.—Breach of Contract.*—Where any thing remains undone, necessary to transfer the title to personal property which is sought to be delivered to the vendee by the vendor under a contract for the sale and delivery of the same, an action on the contract for the value of the same can not be maintained by the vendor. But, where such thing remains undone through the fault of the vendee, he may be liable for a breach of such contract.

From the Hamilton Circuit Court.

*D. Moss*, for appellant.

*J. W. Evans* and *R. R. Stephenson*, for appellees.

NIBLACK, C. J.—James Maguire, on the 26th day of April, 1875, commenced a suit against the Indianapolis, Peru and Chicago Railway Company, upon a complaint consisting of three paragraphs.

The first paragraph was for the recovery of a premium of fifteen cents per cord on a certain lot of wood, known as hard wood, which the plaintiff alleged was due him on a contract between the parties for the sale of the wood.

The second was for the recovery of the value of another lot of wood alleged to have been sold and delivered to the defendant in pursuance of a special contract.

The third was for wood sold and delivered to the defendant.

The defendant answered:

1. In general denial;
2. Payment, generally;
3. Payment by the delivery of a voucher which was not then due.

The plaintiff replied to the second and third paragraphs in denial.

The said Maguire on the 7th day of July, 1875, commenced another suit against the same railway company on a complaint containing two paragraph

The first was upon a voucher for wood sold and delivered to the defendant; being the same voucher referred to in the third paragraph of the answer above set forth.

The second was for twelve hundred cords of wood sold and delivered to the defendant; being really the same wood covered by the voucher.

The defendant answered this complaint:

1. By a general denial;
2. By alleging fraud;
3. By pleading payment;
4. By setting up an accord and satisfaction as to the second paragraph.

The plaintiff replied:

1. In denial of the second, third and fourth paragraphs of the answer;

2. Also accord and satisfaction of the fraud charged in the second paragraph.

These suits were afterward consolidated, and together constitute the cause now before us on appeal.

On the trial of these suits, as thus consolidated, there was a verdict for the plaintiff, and, over a motion for a new trial, a judgment was rendered on the verdict.

The only error assigned is upon the overruling of the motion for a new trial.

At the trial the plaintiff made three, and only three, claims against the defendant.

The first was for the premium on three thousand five hundred and fifty cords of wood sold and delivered to the defendant. The second was for five hundred and forty-eight cords of wood placed in ricks near the defendant's road, in March and April, 1875, and the third was upon the voucher, above named, which was for two thousand one hundred and sixty-nine dollars, and payable five months after February 1st, 1875. The verdict was for three thousand seven hundred and thirteen dollars and twenty-five cents—enough to cover all these claims.

The plaintiff testified on the trial, that in the fall of 1872 he had a conversation with Macy, president of the defendant, the railroad company, in regard to furnishing wood for the company, and that Macy told him that they, the company, would take all the wood he might put out upon their line of road, without limit as to time or the quantity of the wood; that they would pay him $2.25 per cord for hard wood and $1.75 per cord for soft wood, and allow him a premium of fifteen cents per cord on all the hard wood he might deliver, to all of which plaintiff agreed; that he delivered to the company 3,550 cords of hard wood,

from February 15th, 1873, to November 8th, 1873; that he received his pay for all of that wood, less the premium, except $15.40 at one time and $2.50 at another; that Macy told him, when he first commenced delivering wood, that the wood would be measured every month and paid for one-half in cash and the remainder in thirty days, but that after the summer of 1873, when one Lunt came in as road-master, it had not been measured oftener than once in two or three months and vouchers given due in sixty and ninety days, and sometimes due in five and six months; that in the latter part of January, 1875, the company measured and accepted 964 cords of wood delivered and piled up near the track of their road, and gave him a voucher for it for $2,169, due in five months after February 1st, 1875; that he delivered and put on the road 548 cords of wood, about one mile north of New Britain, in March and April, 1875, which had not been measured by the company, but which he had caused to be measured by two persons under his direction; that this wood was delivered in pursuance of his original agreement with Macy, and that some of it was on the right of way and some of it outside of that; that he had asked Lunt, the road-master, two or three times to measure this wood; that Lunt at one time said they would receive the wood as soon as other unsettled wood matters were disposed of; that at another time Lunt said he did not know whether they would take it at all or not; that Macy afterward said he would not receive the wood until some other wood matters were settled, referring to a difficulty which had sprung up in regard to the quality and the quantity of the wood embraced in the voucher sued on in this action.

This, we think, is a fair abstract of so much of the plaintiff's testimony as we are called upon to review here, and sufficiently comprehensive to present his case in its most favorable light in this court.

A considerable number of other witnesses testified in the cause, but there was nothing seriously conflicting with the plaintiff's testimony, so far as it is above set forth.

There was evidence tending to show that the plaintiff's claim for premium on the hard wood had been compromised and adjusted before this suit was commenced. Also tending to show that the lot of wood for which the voucher was given fell short in measurement, owing to the deceptive manner in which it was piled, and was much of it of an inferior quality; but, as to each of these demands, there was testimony enough to sustain the verdict, and we see no error in the court's refusal to grant a new trial on account of the alleged insufficiency of the evidence as to either one of such demands.

The paragraph of the complaint relating to the five hundred and forty-eight cords of wood, above referred to, was for wood sold and delivered. The evidence appears to us not to sustain the allegation of the sale and delivery of this wood. The agreement testified to by the plaintiff was, that the company were to *take* from him all the wood he might put out on the road, and the course of dealing between the parties very clearly indicated an understanding between them that the company were from time to time to receive and measure the wood, executing to the plaintiff vouchers for the same, payable at such reasonable times as might be convenient to the company.

The evidence, we think, would have tended strongly to have made out a case against the company, for failing to receive and measure the wood according to the agreement and understanding between the parties, but did not show a state of facts entitling the plaintiff to recover the value of the wood as upon a sale and delivery. There was no proof of anything done on the part of the plaintiff which divested him of his title to this wood or which restricted

him in any manner in his control over it.   *The P., C. & St. L. R. W. Co.* v. *Heck,* 50 Ind 303.

We must, therefore, hold that the defendant's motion for a new trial ought to have been sustained.

As there is nothing in the record informing us how much was erroneously allowed to the plaintiff on account of the above named five hundred and forty-eight cords of wood, the judgment will have to be reversed as to the whole case.

The judgment is reversed, at the costs of the appellee, and the cause remanded for a new trial.

Petition for a rehearing overruled.