No. 10,661.

THE COMMERCIAL NATIONAL BANK v. GILLETTE.

SALE.—*Delivery.*—*Goods in Bulk.*—*Title.*—*Contract.*—*Performance.*—A sale of personal property constituting a part of a large mass of like property passes no title to the purchaser until it is separated from the mass, or in some other manner designated.

From the Elkhart Circuit Court.

*J. M. Vanfleet,* for appellant.

*J. H. Baker* and *J. A. S. Mitchell,* for appellee.

ELLIOTT, J.—The Elkhart Car Company, by a written contract, sold to the appellant 510 car wheels, constituting a part of 1,100 wheels; at the time of the sale the wheels were in one common mass, and there was no separation nor any designation of the wheels sold to the appellant; after the execution of the contract the entire lot of wheels was seized upon executions issued at the suit of appellee, and this action was brought for the possession of those sold.

· The contention of appellee is that appellant acquired no title, because the articles sold were not designated or separated from the common lot of which they formed a part, and this contention prevailed in the court below.

There is much strife in the American cases upon this ques-

The Commercial National Bank *v.* Gillette.

tion, but none in the English. ·The weight of the former is, perhaps, with the theory of appellant, but the text-writers are, so far as we have examined, all with the English deci- sions. Our own cases are in harmony with the long established rule of the common·law. In the case of *Bricker* v. *Hughes,*·4 Ind. 146, the English rule was approved and enforced. In *Murphy* v. *State,* 1 Ind. 366, the court said: " To render a · sale of goods valid, the specific, individual goods must be agreed on by the parties. It is not enough * * that they are to be taken from some specified larger stock, because there still remains something to be done to designate the portion sold, which portion, before the sale can be completed, must be separated from the mass." This doctrine found approval in *Scott* v. *King,* 12 Ind. 203, and there are other cases recog- nizing it as the correct one, among them *Moffatt* v. *Green,* 9 Ind. 198; *Indianapolis, etc., R. W. Co.* v. *Maguire,* 62 ·Ind. 140; *Bertelson* v. *Bower,* 81 Ind. 512; *Lester* v. *East,* 49 Ind. 588, *vide* opinion, p. 594. The rule which our court has adopted is upheld by the American cases of *Hutchinson* v. *Hunter,* 7 Pa. St. 140; *Haldeman* v. *Duncan,* 51 Pa. St. 66; *Fuller* v. *Bean,* 34 N. H. 290; *Ockington* v. *Richey,* 41 N. H. 275; *Morrison* v. *Woodley,* 84 Ill. 192; *Woods* v. *McGee,* 7 Ohio, 467; *McLaughlin* v. *Piatti,* 27 Cal. 463; *Courtright* v. *Leonard,* 11 Iowa, 32; *Ropes* v. *Lane,* 9 Allen, 502; *Fergu- son* v. *Northern Bank,* 14 Bush, 555 (29 Am. R. 418). In Michigan, the rule seems not to be definitely settled, but in a late case it was said: " To the elaborate argument made for the defence to show that there can be neither a sale nor a pledge of property without in some manner specially distin- guishing it, we fully assent, and we have no purpose to qual- ify or weaken the authority of *Anderson* v. *Brenneman,* 44 Mich. 198." *Merchants', etc., Bank* v. *Hibbard,* 48 Mich. 118; S. C., 42 Am. R. 465.

·The civil law rule is the same as that of the common law, and our great lawyers have given it unhesitating approval. 2 Kent Com. 639; Story Sales, section 296.

The American cases which have departed from the long set-tled rule, are built on the cases of *Kimberly* v. *Patchin*, 19 N. Y. 330, and *Pleasants* v. *Pendleton*, 6 Rand. 473, and these cases proceed upon the theory that commercial interests de-mand a modification of the rule. In our judgment, commer-cial interests are best promoted by a rigid adherence to the rule which the sages of the law have so long and so strongly ap-proved. The rule secures real transactions and actual sales, and thus checks the wild spirit of speculation. It prevents, in no small measure, the making of mere wagering contracts; it puts business on a stable basis, and makes it essential that there should be real, and not sham, transfers of property; it makes titles secure, protects creditors and purchasers and re-presses fraud. If it were granted that the rule does some-what interfere with the freedom of business transfers, still the good it produces far outweighs this inconvenience. But we do not believe it does interfere with actual business transfers, for common experience informs us that real sales are seldom, if ever, made without a specific designation of the thing bought. The rule may interfere with dealers in " margins," makers of " corners," and framers of " options," and to affirm that it does do this is to give it no faint praise. In princi-ple the rule is sound, and in practical operation salutary.

The efforts made by the courts that have departed from it to make exceptions, to manufacture distinctions and point out differences in order to escape disastrous consequences, affords strong evidence of the wisdom of the rule. The line of de-cisions in some of the States, where a departure has been taken, is a devious and tortuous one, and this is to be expected when once sound principle is turned from and new rules sought and adopted which have no support in fundamental principles.

We have no disposition to depart from the rule which has so long prevailed in this State and elsewhere.

Judgment affirmed.

Petition for a rehearing overruled.