Martz v. Putnam.

Filed Feb. 20, 1889.

No. 12,672.

MARTZ v. PUTNAM.

REPLEVIN.—*Property in Hands of Assignee.—Jurisdiction.*—One against whom a proceeding in replevin is brought in the superior court of a county can not, while failing to deny the allegation of the plaintiff's ownership and his own unlawful detention, oust the jurisdiction of that court by asserting that he holds the property solely in the capacity of assignee under the voluntary assignment law, and must be sued in the circuit court.

SALE.—*Contract.—Personal Property.—Selection.—Delivery.—Vesting of Title. —Bailment.*—Where the contract for the sale of lumber, of a certain quality and designated dimensions, provides that the seller shall saw the same and pile it on sticks in his yard, subject to the order of the purchaser at any time, who is to pay for it when put on sticks, the seller agreeing to load it on cars when ordered by the purchaser, and in pursuance of the contract the timber is sawed, the lumber selected and put on sticks in the seller's yard, and paid for by the purchaser as invoices

Martz v. Putnam.

are rendered, the title thereby passes to the latter, and in subsequently loading the lumber upon the cars when ordered by the purchaser the seller acts as bailee, and not as owner.

SAME.—*Setting Apart Too Much.—Rights of Purchaser.—Voluntary Assignment. —Title of Assignee.—Replevin.*—If, in making the selection of the lumber according to the contract, the vendor sets apart more than is called for by the agreement, and notifies the vendee that it is so set apart and subject to his order, there is a good delivery, and the title passes as to the quantity purchased, and the vendee has the right to take that much and refuse the balance; and if, before the property has been removed by the purchaser, but after it has been ordered shipped, the vendor makes an assignment of all his property for the benefit of creditors, the assignee acquires no title to such property, and the purchaser may maintain replevin.

SAME.—*Postponing of Title.—Insurance by Bailee.*—A stipulation in the contract that the seller should obtain insurance upon the lumber while in his yard, and be responsible for any loss which might occur prior to the delivery on the cars, does not postpone the vesting of the title, the seller, as bailee, having an insurable interest.

From the Marion Superior Court.

*R. Hill* and *R. N. Lamb*, for appellant.

*V. Carter* and *J. L. Mitchell*, for appellee.

OLDS, J.—This is an action of replevin brought by the appellee against William H. Martz, Thomas M., John W. and James C. Dickson, for the recovery of an amount of oak and poplar lumber described in the complaint, of various dimensions, amounting to nearly eighty-nine thousand feet.

Appellant, Martz, filed a separate answer in three paragraphs: *First.* A general denial. *Second.* Alleges ownership in himself; and the *third* alleges that "heretofore, in July, 1884, he was duly appointed assignee of the estate of William B. Dickson & Co., who were debtors, in embarrassed circumstances, and who made an assignment in said county and State, under and in accordance with the voluntary assignment laws of the State of Indiana; that this defendant thereafter accepted said trust and qualified and entered upon his duties as such, and as a part of the assets of said estate that came into his hands as such assignee, was the property sued

for in this action, and he asserts no claim or right thereto except as such assignee. Therefore, he says this court has no jurisdiction to hear or to determine this action, but the same, so far as this defendant is concerned, must be heard and determined by the Marion Circuit Court."

Appellee filed a demurrer to the third paragraph, for want of sufficient facts to constitute a defence. The court sustained the demurrer, to which ruling of the court appellant reserved an exception, and assigns the said ruling as error.

This is the first question for consideration. This paragraph of answer alleges that he took possession of the property in question as part of the assets of the estate of Dickson & Co., but does not deny that the plaintiff was in fact the owner and entitled to the possession, and that the detention by him was wrongful, but it questions the jurisdiction of the court, on the ground that he holds the same as assignee, and as such assignee he can not be sued in the Marion Superior Court.

This position is not tenable. By not denying the fact, the paragraph admits property and the right to possession to be in the plaintiffs, and that he unlawfully detains the same. The unlawful detention is a wrong, and he could not set up that he did such unlawful act in his capacity as assignee, and avoid being sued in an individual capacity. If he detained the property unlawfully, an action of replevin would lie against him by the owner having the right to possession. Such owner was not required to ascertain in what capacity he claimed to own or to hold possession of the property.

If the property was the property of Dickson & Co., and Martz, as assignee, held and was entitled to the possession as such assignee, that would constitute a good defence to the action. In that case his possession would be lawful. *Rose* v. *Cash*, 58 Ind. 278; *Gilbert* v. *McCorkle*, 110 Ind. 215.

The main facts in the case are: The firm of Wm. B. Dickson & Co. entered into contracts for the sale of lumber to appellee on the dates and for amounts as follows: October 3d,

1882, whitewood, 100,000 feet; November 5th, 1882, oak, 118,000 feet; February 23d, 1883, whitewood, 300,000 feet. The lumber was to be of a certain quality, and of various widths, lengths and thicknesses ; to be sawed and piled on sticks in the Dicksons' lumber-yard, subject to appellee's order at any time, the Dicksons agreeing to load the same on cars when ordered by Putnam, Putnam to pay for the same when put on sticks. The second and third contracts provided that Dickson & Co. should insure the lumber from fire until delivered to the railroad, and in case of fire Putnam was not to be responsible for any loss.

There is no provision in the contracts as to the inspection of the lumber.

There was evidence tending to prove that the lumber was sawed by Dickson & Co., and piled on sticks in their yard ; that invoices were sent to Putnam, stating the amounts and prices from time to time, and Putnam paid the amount called for in the invoices as they were rendered to him ; that statements were made in the several invoices that the lumber was on sticks, subject to Putnam's order. From time to time Putnam ordered portions of the lumber shipped to Boston and other points, until there remained only about 89,000 feet unshipped.

There was also testimony to prove that, in May, 1884, the Dicksons pointed out to Putnam's agent the 89,000 feet, all piled in separate piles in the yard, and that said agent then ordered said Dicksons to immediately ship said several piles of lumber to Boston, and the Dicksons at the time promised to do so.

The lumber had all been paid for some months prior to May, 1884. Dickson & Co. failed to ship the lumber as requested and agreed, and on July 21st, 1884, made an assignment, for the benefit of creditors, to the appellant, Martz, and Martz took possession of all the lumber in said Dicksons' yard, including the several piles of lumber which had

been sawed and piled on sticks in separate piles for Putnam under said contracts, amounting to 89,000 feet.

Appellee demanded possession of said lumber, which was refused, and he instituted this suit in replevin to recover possession of the same. Trial was had, and there was a verdict and judgment for the appellee. Appellant filed a motion for a new trial, which was overruled, and exceptions reserved.

It is contended by counsel for the appellant that the court erred in the instructions given to the jury on its own motion, and in refusing to give the instructions asked for by appellant.

Counsel, in their brief, do not urge any objection to the instructions given by the court, except to instructions numbered four and five, and all objections to the other instructions are waived by the failure to discuss them and point out the objections.

The fourth and fifth instructions are as follows:

"4th.  Although you may not find from the evidence that the lumber in controversy was actually measured, yet if you find from the evidence that it or any part of it was sawed under the contracts between said plaintiff and said Dicksons and piled on sticks in said Dicksons' lumber-yard, separate and apart from other lumber of the same kind, as and for the lumber of said plaintiff, under said contracts, and that the said Dicksons sent said plaintiff an invoice or invoices of the same, and statements that the same was subject to his order, and that said plaintiff paid said Dicksons for the same upon or after the receipt of such invoice or invoices, and that this all took place before the date of the assignment of said Dicksons to said defendant Martz, that is, prior to the 21st day of July, 1884, then I instruct you that the title to the lumber in controversy, or of so much of. it as was so sawed and piled on sticks in separate piles so as to be identified, invoiced and held subject to the order of the plaintiff, and paid for by him, did not pass by the said assignment to said defendant Martz, and the plaintiff is entitled to a verdict for all or

any of such lumber or parcels of lumber as you may find from the evidence was so sawed, piled on sticks in separate piles, invoiced and held subject to the order of plaintiff in the lumber-yard of said Dicksons before the date of the said assignment; but if you find from the evidence that either one of the foregoing specified acts of sawing, piling on sticks in separate piles so as to be identified, invoicing to plaintiff, and holding to his order, and payment by plaintiff, was not consummated or performed before the date of this said assignment, before said 21st day of July, 1884, then your finding should be for the defendants.

"5th. If you find from the evidence that the lumber mentioned in the contracts was sawed and piled in the lumber-yard of the defendants Dicksons, and that the same was invoiced to plaintiff and paid for by him after the same was sawed, and you further find from the evidence that the parcels of lumber described in the complaint, or some of them had been by the said Dicksons before their said assignment, of date July 21st, 1884, piled on sticks in piles separate from other lumber in the lumber-yard of said Dicksons, as and for the lumber of said plaintiff, and subject to his order under the contracts between plaintiff and said Dicksons, before the date of the said assignment of said Dicksons to said Martz, and that, in the month of May, 1884, or at any other time before said Dicksons made their said assignment to said defendant Martz, the defendants Dicksons designated and pointed out to the plaintiff, or his agent, any of such piles of lumber in their said yard as the lumber of said plaintiff under said contracts; and if you further find that at the same time, or soon after and before said assignment, the plaintiff, or his agent, ordered the said Dicksons to ship the same piles of lumber so designated and pointed out, and that said Dicksons, or either one of them, then and there promised to ship the same to plaintiff, I then instruct you that such designation and pointing out, and the order of the plaintiff, or his agent, to ship the same, and the promise of said Dicksons

to so do, was a sufficient setting apart and designating of such piles or parcels of lumber to pass the title to the plaintiff in such piles or parcels, and for such identical piles or parcels of lumber, if any, described in the complaint, you find from the evidence was so designated and pointed out, ordered and promised to be shipped, you should find for the plaintiff, and if you find there is or are any pile or piles or parcels of lumber not so designated and pointed out, ordered and promised to be shipped, described in the complaint, then as to such pile or piles or parcels of lumber, you should find for the defendants.''

It is contended by counsel for the appellant, that, as the contracts specified the kind and quality of lumber, giving the dimensions, the length, thickness and width, if there was any portion of the lumber in the piles that did not conform to the specifications designated in the contracts, the purchaser, Putnam, would not be bound to receive such portion of the lumber or board or boards that did not conform to the specifications of the contracts, and that he could refuse to receive the same at any time before the same was loaded on the cars; that the Dicksons would have the right to retain and refuse to allow Putnam to take any lumber in the piles that differed in dimensions from the lumber described in the contracts, and hence there was no such separation of the lumber purchased from the general stock of lumber of the Dicksons, and no such designation of the particular lumber described and purchased by the contracts, as would pass title; that there yet remained something to be done, viz., measuring and inspecting the lumber before the title would pass to the purchaser.

It is further contended that it appears from the contracts that the title was not to pass until the lumber was loaded on the cars, for the reason that it is provided that the Dicksons were to insure the lumber against loss by fire, and if the lumber was destroyed by fire prior to being loaded on the cars that Putnam was not to suffer the loss, and that if the

title passed when piled on sticks in separate piles and paid for, the Dicksons would have no insurable interest in the same; that the charge of the court is erroneous in stating that the title would pass to Putnam on the doing of the things stated in the charge prior to the delivery on board the cars.

The contracts in this case do not provide when nor by whom the lumber should be measured and inspected; there is an entire absence of anything in regard to inspection and measurement. They are contracts for so much lumber of certain kinds and dimensions.

The court, by the fourth instruction, charged the jury that, although the lumber was not actually measured, yet if the lumber was sawed under the contracts between appellee, Putnam, and the Dicksons, and piled on sticks in Dicksons' lumber-yard, separate and apart from other lumber of the same kind, as and for the lumber of Putnam, under said contracts, that the Dicksons sent Putnam an invoice of the same, stating that it was subject to his order, and that Putnam paid the Dicksons for the same upon or after the receipt of the invoice, before the date of the assignment of the Dicksons, the title did not pass to the assignee.

This instruction was based upon the theory that Dickson & Co. had contracted, and were bound by the contract, to furnish to Putnam a certain number of feet of lumber of a stated kind, quality and dimensions, to be sawed and piled in separate piles on sticks in the lumber-yard of the Dicksons, and when so piled and separated it was to be paid for by Putnam, and that when the Dicksons had, in good faith, sawed the lumber, separated it and piled it upon sticks, invoiced it and sent the invoice to Putnam, stating that the lumber was subject to his order, and he had 'paid for it, the title passed. That the Dicksons, after they had done all these acts under the contracts, and received the money of Putnam for the full value of the lumber, could not, and neither could their assignee, say that if there was a board, or any number of

boards, in the piles which differed in dimensions from those which the contract called for, therefore there was no separation of the lumber sold from the Dicksons' other lumber, and the title did not pass to any of the lumber.

By the contract, Dickson & Co. sold to Putnam a certain quantity of lumber of certain designated dimensions. Dickson & Co. were to saw the lumber and separate it from their other lumber, and pile the same on sticks. By the terms of the contract Dickson & Co. were to elect what lumber was to be set apart from the main bulk of lumber owned by them in fulfilment of the contract.

Benjamin on Sales, section 359, says: "The rule on the subject of election is, that when, from the nature of an agreement, an election is to be made, the party who is by the agreement to do the first act, which, from its nature, can not be done till the election is determined, has authority to make the choice, in order that he may be able to do that first act, and when once he has done that act, the election has been irrevocably determined."

The first act to be done after the selection of the lumber and its separation from other lumber, was to pile it on sticks; that act Dickson & Co. were to perform, and by the contract they had the right to make the selection, and when once selected and piled, it was to be paid for by Putnam, and to be subject to his order.

When Dickson & Co. made the selection, and separated the lumber so selected from their other lumber, and piled it on sticks, sent an invoice to Putnam, and stated that it was subject to his order, and Putnam paid for it, the election was irrevocable, and the title passed to Putnam. Under the terms of these contracts it would constitute a severance of the property sold from the other lumber of Dickson & Co., and a delivery of the goods.

If, in making such selection, he selected more lumber than the contract called for, and piled it on sticks for the purchaser, and notified him that it was so piled, subject to his order,

Putnam, the purchaser, would have the right to take only the amount purchased, and refuse the balance, but it would constitute a good delivery, and pass the title to so much as was purchased.

Benjamin on Sales, p. 293, says : " In case the whole mass is delivered to the vendee, with a right and power in him to make the separation, the title sufficiently passes to render him liable for the price, or enable him to sue any one for the wrongful conversion of the goods, even before he has separated them." *Crofoot* v. *Bennett*, 2 N. Y. 258.

In the delivery of the lumber upon the cars after such selection, notification and payment, Dickson & Co. only acted as bailees, and not as owners.

Story, in his work on Sales, section 298*a*, p. 317, stated the doctrine to be : " If payment is not to be made until delivery at some particular place, it might be fairly inferred that the contract was executory until such delivery, but where the sale appears to be absolute, the identity of the thing fixed, and the price for it paid, the title passes, and in carrying the property to some other place for the purchaser, the seller acts as bailee and not as owner." *Terry* v. *Wheeler*, 25 N. Y. 520.

The rule that if anything remains to be done the property does not pass, applies to anything that is required to be done prior to the delivery of the property. *Gibbs* v. *Benjamin*, 13 Am. Law Reg. 93. In this case the property was delivered by the piling on sticks, and from thenceforward it was held by the vendor subject to the order of the vendee. A sale may be complete so as to pass title, and yet something to be done by the parties, as weighing or counting the articles. *Riddle* v. *Varnum*, 20 Pick. 280. It is governed to some extent by the intention of the parties as expressed by their contract. *Whitcomb* v. *Whitney*, 24 Mich. 486.

In the fifth instruction to the jury the court said, in effect, that if the lumber mentioned in the contracts was sawed, piled on sticks in separate piles in the lumber-yard

of the Dicksons, as and for the lumber of said Putnam, subject to his order, paid for and designated and pointed out by Dickson & Co. to Putnam, or his agent, and Putnam, or his agent, had instructed Dickson to ship the same, and Dickson & Co. had promised to ship the same, and this had occurred before the assignment of Dickson & Co., by these acts the title had passed to Putnam before the assignment.

If all these things had taken place, it would constitute a separation of the lumber from the remainder of Dicksons' lumber, and a delivery by Dickson & Co. to Putnam, and an acceptance by Putnam of the lumber, and the title to the same was in Putnam before the assignment of Dickson & Co.

It is further suggested and claimed that, as Dickson & Co. were to insure the lumber against loss by fire, and that, in case of loss by fire prior to the delivery on board the cars, they were to bear it, these facts should be taken as showing that the property did not pass to Putnam until the lumber was so delivered on the cars, and that the parties to the contract so understood it, as the vendors would have no insurable interest in the lumber if the title had passed to the vendee.

We think this clause in the contract negatives the theory of the counsel, and is in support of the interpretation placed by us upon the contract, that the title passed at the time of piling on sticks in separate piles.   If the title did not pass, and it was understood by the parties to the contract that the title did not pass, until the lumber was delivered on board the cars, then if loss occurred before the delivery on cars and after piling on sticks, it would be the loss of Dickson & Co., and not the loss of Putnam, and there was no reason for such provision against loss by Putnam.

It is for the reason that the property was delivered by the piling on sticks in separate piles, and thereafter was the property of Putnam, the Dicksons simply holding the same subject to his order, that made any necessity for the provision in regard to insurance and for loss to be borne by

Dickson & Co. during the interval between piling and shipping. It was a part of the consideration of the purchase that Dickson & Co. should insure the lumber and be responsible for loss by fire while it remained in their custody as bailees, and they had an insurable interest in the lumber. Schouler's Bailments and Carriers, 2d edition, sections 116 and 106. There was no error in the giving of instructions four and five by the court.

The charges asked for by the appellant stated general principles of law which were given to the jury by the charges of the court, given on its own motion, with the exception of the second charge, which is as follows: "Under the terms of the written contract between said plaintiff and said Dicksons, the title to the lumber described therein did not pass from the Dicksons to the plaintiff until everything that the Dicksons were to do in regard to said lumber, including its measurement and setting apart and loading on the cars for plaintiff in accordance with the terms of the contract, had been done." This instruction was properly refused for the reasons we have stated in considering the other charges. The title passed to Putnam when the lumber was separated, piled on sticks and paid for, and thereafter the Dicksons held it as bailees, subject to Putnam's order.

Counsel for appellant cite in support of their position the case of *Lester* v. *East*, 49 Ind. 588. That case differs materially from this. The contract provides specifically that the hogs shall be weighed at one place and delivered at another, at a certain time; to be hogs of a specified kind, part of the number then owned by the seller, and part to be received by him from another person. The hogs were never separated, weighed or delivered. Also, the *Commercial Nat'l Bank* v. *Gillette*, 90 Ind. 268. That was a sale of 510 car wheels, constituting a part of 1,100 wheels, and there had been no separation or delivery.

This case differs from all the cases cited by counsel for appellant. In this there was both a separation and a deliv-

ery, while in the cases cited there was either no separation and delivery or no delivery.

The remaining question to be considered is whether the verdict is sustained by sufficient evidence, that being assigned as a cause for a new trial. This is argued upon the theory that the evidence did not show that there had been any delivery of the lumber, such as to pass the title to Putnam, before the assignment of Dickson & Co.

There is evidence tending to show the sawing, separation, piling on sticks in separate piles by Dickson & Co., as the lumber of Putnam under the contract, and invoicing and sending invoices to Putnam, including statements that the same was subject to his order, and full payment for the same by Putnam, and that the Dicksons pointed out the several separate piles of lumber to Putnam and his agent, and that they were instructed by the agent of Putnam to put the lumber on board the cars and ship the same, and agreed to do so; that all these acts took place before Dickson & Co. made an assignment. There was evidence to support the verdict.

There is no error in the record for which the judgment should be reversed.

Judgment affirmed, with costs.

Filed Feb. 20, 1889.