Argued 10 January, decided 6 February, 1905.

**LA VIE v. TOOZE.**

79 Pac. 413.

SALES—WHEN TITLE PASSES.
When property is identified by seller and buyer, weighed, marked and paid for, the sale is complete and title passes,* though the property is left with the seller under an agreement as to future delivery.

*NOTE.—See notes as follows: Essentials to a Valid Sale of Goods, 17 L. R. A. 176-181; Necessity for Delivery, 47 Am. St. Rep. 875-876; Delivery—Retention of Possession by Vendor, 60 Am. St. Rep. 237, 238.
REPORTER.

From Marion: GEORGE H. BURNETT, Judge.

Action of replevin by George La Vie against Walter L. Tooze, resulting in a judgment for defendant.              REVERSED.

For appellant there was an oral argument by *Mr. John A. Carson* and *Mr. A. M. Cannon,* with a brief over the name of *Carson, Adams & Cannon,* urging among others, these points.

This action was commenced to recover possession of a quantity of hops claimed to have been purchased by La Vie from one Kaser, and subsequently taken from him by Tooze, who also claimed to have purchased from Kaser. The case has been once to this court upon appeal: *La Vie* v. *Tooze,* 43 Or. 590 (74 Pac. 210). Upon a retrial La Vie, to prove a completed sale, introduced evidence to show a selection, identifying, branding, weighing, and delivery of the hops, and a payment of the whole purchase price at the agreed rate per pound. Payment was made to Kaser by check, which he accepted. There is no material dispute in the evidence as to the facts by which a sale or no sale is to be tested. The defense was that Kaser did not intend to deliver the hops. He admitted he did not communicate this intention to appellant, but on the contrary he set the hops apart, branded them for appellant and accepted his check in payment.

Upon this state of facts La Vie requested a directed verdict upon the theory that a completed sale and delivery is the only deduction, in law, to be had from the admittedly essential facts appearing in the record. This motion the court overruled and submitted the case to the jury for decision, upon the facts, as to whether there had been a completed sale. There was a verdict and judgment for defendant. Plaintiff appeals and insists here that the court erred in not directing a verdict as requested.

I. A bargain for the sale of personal property becomes a completed sale upon the marking, identifying and setting aside of the property sold as the property of the buyer by the seller, an acceptance of the same by the buyer, and payment of the purchase price: *Johnson* v. *Hibbard,* 29 Or. 184 (54 Am. St.

Rep. 787, 44 Pac. 287) ; *La Vie* v. *Tooze,* 43 Or. 590 (74 Pac. 210)`; *Scott* v. *King,* 12 Ind. 203; *Martz* v. *Putnam,* 117 Ind. 392 (20 N. E. 270) ; *Fordice* v. *Gibson,* 129 Ind. 7 (28 N. E. 303) ; *Baldwin* v. *Doubleday,* 59 Vt. 7 ; *Colwell* v. *Keystone Iron Co.* 36 Mich. 51; *Gravett* v. *Mugge,* 89 Ill. 218; *Rothwell* v. *Alves,* 61 Ill. App. 156; *Haxell* v. *Willis,* 15 Grat. 434; *Roil* v. *Little Falls Co.* 47 Minn. 422; *Lancing* v. *Turner,* 2 Johns. 13; *Olyphant* v. *Baker,* 5 Denio, 379; *Levassure* v. *Carey,* 3 Atl. 461 (with note) ; Story, Contracts, § 298.

II. Although the contract may specify a particular place for delivery, such provision becomes unimportant and is waived, the transit ended, and the vendor's right over the property is gone, where the buyer pays for the same or does any act equivalent to taking possession: *Baldwin* v. *Doubleday,* 59 Vt. 7; *Foster* v. *Frampton,* 13 E. C. L. 107; *Cooper* v. *Bill,* 3 H. & C. 727.

III. In such case, there being no material dispute over the facts, and the only legal inference deducible from such a transaction being a completed sale, the court should have directed a verdict for appellant: *Coffin* v. *Hutchinson,* 22 Or. 554; *Anderson* v. *Adams,* 43 Or. 621 (74 Pac. 215) ; 6 Ency. Pl. & Pr. 686, and cases cited.

IV. Where from the nature of the case it is apparent that only one of the parties to an action can, in law, prevail, on a reversal by the supreme court, as against the party who cannot prevail, a new trial should not be ordered, but the case should be remanded with instructions to render judgment notwithstanding the verdict: *Anderson* v. *Adams,* 43 Or. 621 (74 Pac. 215) ; *Bernhard* v. *Reeves,* 6 Wash. 424 (33 Pac. 873) ; *Berning* v. *Medart,* 56 Mo. App. 443; *Rosenfeld* v. *Goldsmith* (Ky.), 13 S. W. 3; *Hatley* v. *Pike,* 162 Ill. 241 (53 Am. St. Rep. 312) ; *Pennington* v. *Underwood,* 56 Ark. 53; *Shotwell* v. *Dennman,* 1 N. J. L. 396; *Stein* v. *Stein,* 44 Ill. App. 107.

For respondent there was an oral argument by *Mr. Geo. G. Bingham,* with a brief over the names of *L. J. Adams* and *G. G. Bingham,* to this effect.

1. In this case the sale was executory and no title passed by the hop contract prior to the delivery: *Backhaus* v: *Buells,* 43 Or. 558 (73 Pac. 342) ; *La Vie* v. *Tooze,* 43 Or. 590 (74 Pac. 210).

2. If by the terms of the contract the seller is required to send or forward the goods to the buyer, the title and risk remains in the seller until the transportation is at an end, after which time the title is vested in the buyer: *Julius Winkelmeyer Brew. Assoc.* v. *Nipp,* 6 Kan. App. 730-736 (50 Pac. 956-958) ; *Gipps Brewing Co.* v. *DeFrance,* 91 Iowa, 108 (58 N. W. 1087, 51 Am. St. Rep. 329, 28 L. R. A. 386) ; *Hamilton* v. *Gordon,* 22 Or. 557-561 (30 Pac. 495) ; *Buckingham* v. *Dake,* 112 Fed. 258-269 ; *Gunn* v. *Knop,* 73 Ga. 510 ; 1 Benjamin, Sales (Corbin's ed.), §§ 185, 308, 425, 427.

MR. JUSTICE BEAN delivered the opinion of the court.

This is an action to recover possession of 40 bales of hops. The complaint is in the usual form. The answer denies the allegations of the complaint except the possession of the hops by the defendant, and alleges ownership and right of possession in him. A trial before a jury resulted in a verdict and judgment for defendant, and plaintiff appeals.

The facts are these: In January, 1902, the plaintiff and one J. R. Kaser entered into a contract by the terms of which Kaser bargained and sold and agreed to deliver to the plaintiff 8,000 pounds of hops to be grown by him during the season of 1902 on the farms of Henry and Rhoda Allen, at a stipulated price of 10½ cents per pound. The plaintiff was to advance $80 on or before April 1 for cultivating, and five cents per pound on or before September 1 for picking and curing purposes; such advances and interest thereon to be liens on the crop. The hops were to be delivered by Kaser to the plaintiff at the Silverton depot or on board the cars at such time between the 1st and 31st of October as plaintiff might direct, and upon the delivery and acceptance the plaintiff was to pay the balance due thereon. The advances were made as agreed upon, and on October 25, after the hops had been harvested, cured and

baled, and were in condition for delivery, but while still on the Allen place, Mr. Krebs, the agent of the plaintiff, in company with Kaser and Allen, went to the building in which the hops were stored, and what there took place, and the purpose of the parties, is thus detailed by the witnesses: Krebs says he went to the house to inspect, brand, receive, and pay for the hops coming to the plaintiff under the contract with Kaser; that Allen was entitled to a certain part of the hops as rent, and went along to see that he received his proper share; that the hops were stored in the first and second stories of the building; that it was agreed between the parties that he should take the hops on the upper floor, and finish out the quantity coming to him from the lower floor; that after the division between Kaser and Allen had been made he and Allen weighed Kaser's share of the hops and at his request Kaser marked them with the brand of Krebs Brothers and the number of the lot; that the amount due Kaser was then figured up, Allen acting for him, and he (witness) gave Kaser a check on Ladd & Bush, of Salem, for the amount found due on the contract of sale after deducting advances previously made; that Kaser received such check without objection, and agreed to haul the hops for the plaintiff to Silverton, and to ship them to him at New York; that he (witness) then filled out a shipping bill or receipt, stating the number of bales, the weight and destination, and delivered it, with the check, to Kaser, with directions to have it signed by the agent at Silverton, and take it, with the check, to the bank, so that the bank would send the shipping bill or receipt to the Salem bank, where the plaintiffs could obtain possession of it; that the object in inspecting and branding the hops in the warehouse and giving the check to Kaser was to accept them and pay for them at that place, and pass the title to the plaintiff.

Mr. Allen testified that Kaser was a tenant of his; that on or about October 25, Krebs, the agent of the plaintiff, came out to his place to receive or take in the hops he had contracted for from Kaser; that as witness and Krebs were going to the hophouse they passed by where Kaser was sitting, and Krebs

said to him that he had come out to "take in" the hops, and
Kaser said, "Go out to the hophouse, and I will be there,"
and came in a few minutes; that witness took out the rental
due him, and he and Krebs weighed the balance, and Kaser,
at Krebs's request, put the brand or mark thereon; that the
amount was then figured up, and Krebs gave Kaser a check
for the balance due him; that according to the understanding
of the witness, Krebs came out to the farm to receive the hops
and close up the transaction; that after he drew the check, and
delivered it to Kaser, he instructed him to take the hops to
Silverton, have the railroad agent sign a shipping receipt, which
Krebs prepared and gave to Kaser at the time, and take it,
with the check, to the bank; that nothing was said as to when
Kaser should cash the check, and no conditions were attached
to its delivery. Kaser testified that Krebs came out to the
Allen place, and "we divided my part and Mr. Allen's part,
and he inspected mine, and weighed them, and gave me a check
for the amount, and told me to deliver them on board the cars
at Silverton, and get the shipping receipt signed by the con-
ductor, and I could get my money for them"; that Krebs came
out to the place and weighed and marked the hops with the
intention, as witness supposed, of getting possession of them
under the contract; that witness helped him weigh and mark
them, but did not then intend to deliver the hops to the plain-
tiff, although he did not make such intention known to Krebs.
The witness further testified that at the time he received the
check and shipping receipt · he did not intend to deliver the
hops to the plaintiff, but to sell them to another if he could
do so; that he afterwards hauled the hops to Silverton, and
stored them in a warehouse, and subsequently sold them to the
defendant; that he marked the hops with the plaintiff's brand,
and received the check in payment thereof, because he did not
think it would make any difference; that he did not say any-
thing to either Allen or Krebs indicating an intention not to
deliver the hops, but supposed that they both thought he intended
to do so; that on October 31 he offered to return to the plain-
tiff the check, and pay all advances previously made, with inter-

est. From this testimony it appears that there is no substantial controversy as to the facts, and the question on this appeal is whether, under the facts, the title to the hops passed to plaintiff at the time they were inspected, weighed, branded, and paid for on the Allen farm.

The contract between Kaser and the plaintiff made in January, 1902, was executory, and no title passed to the property therein mentioned until the hops were delivered and accepted (*Backhaus* v. *Buells,* 43 Or. 558, 72 Pac. 976, 73 Pac. 342); but the plaintiff was not obliged to wait until the hops had been delivered at the place mentioned in the contract before receiving and accepting them: *La Vie* v. *Tooze,* 43 Or. 590 (74 Pac. 210). He could receive them elsewhere; and, if they were in fact delivered to and paid for by him at the Allen farm, in pursuance of the contract, the transaction constituted a completed sale, and the title vested in him, although it was understood that the defendant was afterwards to transport the property to Silverton. The hops were ready for delivery. Nothing whatever remained to be done by Kaser to put them in deliverable condition. They were inspected, weighed, branded, and paid for by the purchaser. All that remained for the seller to do was to take them to the depot or cars, and ship them to the plaintiff at New York. By the terms of the contract the plaintiff could have insisted upon the delivery at the place specified before he received or accepted the hops, but, as he waived that right, and paid the balance due thereon at the Allen farm, the transaction is governed by the same rules as those which control the sale of specific articles of personal property. The law is that, where there is no manifestation of an intention to the contrary, the contract as between the parties is an actual sale if the specific thing is identified, agreed upon, delivered, and paid for, although it may be left in the actual custody of the seller under an agreement to deliver it in the future at some particular place. Thus, in *Scott* v. *King,* 12 Ind. 203, the defendant agreed to sell and deliver to plaintiff on board a canal boat 4,000 bushels of corn, payment to be made upon delivery. Two thousand bushels were delivered as agreed upon. The

remainder was not delivered at the time specified, but the defendant informed the plaintiff that the corn was in the warehouse ready for delivery whenever he would send a boat, and requested payment therefor, which was made accordingly. Before the corn was called for by the plaintiff, and while it remained in the defendant's warehouse, it was destroyed by fire. The plaintiff thereupon brought an action against the defendant to recover damages for the failure to deliver the corn, but the court held that, as the corn was set apart so that it could be identified, and had been paid for, the sale was complete, and the transfer of the corn from the warehouse to the boat, although necessary to a full performance of the contract of sale as actually made, was waived by payment before delivery. So, in this case, the provision in the contract between Kaser and the plaintiff that the hops should be delivered at a certain place was for the benefit of the plaintiff, and he waived the performance of such stipulation by receiving, accepting, and paying for them at the Allen farm. By such acts the title passed to him, and the subsequent possession of the property by Kaser was as his agent or bailee, and not as owner.

The rule, so often stated in the books, that, if anything remains to be done by the seller of personal property, the title does not pass, generally applies to things that are required to be done before delivering—such as ascertaining the identity, quality, or quantity of the article sold, or putting it in a condition which the contract required; but, as said by Mr. Justice SELDEN in discussing this question in *Terry* v. *Wheeler*, 25 N. Y. 520: "No case has been referred to by counsel, nor have I discovered any, in which, where the article sold was perfectly identified and paid for, it was held that a stipulation of the seller to deliver at a particular place prevented the title from passing. If the payment was to be made on or after delivery, at a particular place, it might fairly be inferred that the contract was executory until such delivery; but where the sale appears to be absolute, the identity of the thing fixed, and the price of it paid, I see no room for an inference that the property remains the seller's merely because he has engaged to transport it to a given point.

I think in such case the property passes at the time of the contract, and that in carrying it the seller acts as bailee, and not as owner. The questions which arise in such cases as to sales are questions of intention, such as arise in all other cases of the interpretation of contracts; but when the facts are ascertained either by the written agreement of the parties or by the findings of a court, as they are here, they are questions of law." Now, in the case at bar, the facts are not disputed, and therefore the effect of them was not for the jury, but purely a question of law. That the title to the hops passed to the plaintiff at the time they were inspected, branded, and paid for at the Allen farm appears to us very clear. No other reasonable interpretation can be put upon the acts of the parties. Krebs went to the farm, as all agree, to "take in" the hops. With this understanding, and without objection from Kaser, he inspected, branded, received, and paid for them. No conditions were attached to the transaction, or to the delivery of the check. The latter was accepted by Kaser in payment of the hops, and he could thereafter have cashed it at any time. There was no understanding or agreement, as the position of defendant assumes, that he could not cash the check unless the shipping receipt, properly signed, accompanied it, when presented for payment. The acts of the parties amounted to more than a mere inspection and identification of the hops, leaving the delivery to be made as provided for under the original contract. They constituted a completed sale, and, if the hops had been thereafter destroyed by fire, the loss would clearly have fallen on plaintiff; or, if Kaser had become bankrupt, and made an assignment, they would not have passed to his assignee: *Martz* v. *Putnam,* 117 Ind. 392 (20 N. E. 270). We are of the opinion, therefore, that under the law as applied to the undisputed facts of the case the plaintiff was entitled to a recovery, and the court should have so instructed the jury. Remanded for further proceedings not inconsistent with this opinion.          REVERSED.