## No. 14,844.

## FORDICE *v.* GIBSON ET AL.

SALE.—*Executory Contract.*—*Personal Property.*—*Delivery.*—*Vesting of Title.*— A. purchased a tract of land for the purpose of cutting and utilizing the timber in the manufacture of staves. An unpaid balance of the purchase-price was secured by a mortgage on the land. A. afterwards entered into a contract with the appellees, whereby he agreed to deliver to them a large number of staves, of his first manufacture of merchantable sawed staves. The contract further provided that the title and ownership of all the timber and staves bought by A. should vest in the appellees until the contract was complied with. The appellees were to furnish A. a sufficient amount of money from time to time to pay for making and hauling the staves. The appellees after receiving within a small number of the entire quantity of staves

mentioned in the contract, seized a large number of staves which had been delivered by A. to the mortgagee of the land on account of the mortgage indebtedness, to reimburse them for advances made to A.

*Held*, that the title to the staves in controversy did not pass to the appellees under the terms of the contract.

*Held*, also, that something was necessary to designate or indicate the staves before it could be said that any given staves or lot of staves passed under the contract.

SAME.—*Article to be Manufactured.— When Title Passes.*—A contract for the sale of an article to be manufactured is an executory contract, and ordinarily no title passes until the thing is completely done and notice given to the vendee, or some act done by the vendor designating it as the thing sold, either by setting it apart, marking it, or some other similar act.

CHATTEL MORTGAGE.—*When Recording Necessary.*—Recording is only necessary to the validity of a chattel mortgage when possession of the mortgaged chattel is not delivered to the mortgagee and retained by him.

From the Scott Circuit Court.

*E. Moser, W. E. Niblack, T. M. Clarke, C. S. Dobbins, J. T. Rogers* and *H. Q. Houghton*, for appellant.

*T. J. Brooks, W. K. Marshall, A. M. Munden, C. L. Jewett* and *M. Storen*, for appellees.

McBRIDE, J.—This was a suit by the appellant to recover of the appellees for the alleged conversion of a lot of staves which the parties agree were of the value of $2,296.86. Both parties claimed title to the staves by purchase from one George S. Beeman.

The facts are substantially as follows: February 4th, 1885, Beeman bought certain land of appellant. The principal value of the land was in the timber growing on it, and Beeman bought it for the purpose of cutting and utilizing the timber in the manufacture of staves. An unpaid balance of the purchase-price was secured by a mortgage on the land. May 21st, 1885, Beeman executed to the appellees the following instrument:

"$8,051.40.        SEYMOUR, IND., May 21st, 1885.

"Received of Gibson & McDonald eight thousand and

fifty-one dollars and forty cents, being part payment on four hundred thousand (400,000) of my first manufacture of merchantable white oak rived staves, of the following dimensions: Not less than 34 inches long, must be cut by 36-inch measure, and to be $\frac{3}{4}$ to $\frac{7}{8}$ of an inch thick on heart edge, and to be $4\frac{1}{2}$ inches wide, clear of the sap. Also three hundred thousand (300,000) of my first manufacture of merchantable sawed staves, 34 inches long, 4 to 7 inches wide, average 5 inches wide, including the sap, and $\frac{3}{4}$ of an inch thick. I agree to deliver F. O. B. cars at Shoals, and at first switch east of Shoals, all the above named staves by December 1st, 1885, for which the said Gibson & McDonald agree to receive, at Seymour, at sixteen dollars per thousand for the rived staves, and seventeen dollars per thousand for the sawed staves, their inspection, and to pay freight on the same to Seymour. I further agree that the title and ownership of all the timber and staves bought by me shall vest in the said Gibson & McDonald until this contract is complied with. The said Gibson & McDonald agree to furnish the said G. S. Beeman a sufficient amount of money from time to time to pay for making and hauling the above named staves.                  G. S. BEEMAN.

"GIBSON & McDONALD."

Up to November 20th, 1885, Beeman had furnished to the appellees under this contract 696,970 staves, or within 3,030 of the number contracted for, and Gibson & McDonald had accepted them. Gibson & McDonald continued furnishing Beeman money up to December 1st, 1885, and in all paid to him $13,941.41, which was much more than the value of the staves received.

In September, 1885, a portion of the purchase-money for the land being due and unpaid, Fordice forbade Beeman cutting or removing any more timber until he was paid, threatening injunction proceedings. At that time the staves in controversy, 159,755 in number, were manufactured and in Beeman's stave yard. About the last of October, 1885,

Beeman turned them over to Fordice to apply on his in-debtedness to him.   Afterward, by arrangement with For-dice, he hauled them to the railroad, and on the 17th day of December, 1885, after the delivery at the railroad was com-plete, Beeman executed to Fordice the following :

   " This certifies that I have this day sold and delivered to Nelson Fordice the following personal property in Martin county, to wit :   159,755 staves, now on line of railroad in Hubert township, in consideration of which said Fordice is to credit my notes, made payable to him when said staves are sold ; and should said staves sell for more than sufficient to pay such as may be due on said notes when sold, then said Fordice is to pay over to me the remainder.   But should said staves not sell for enough to pay said notes, then I am to pay the balance due, or to become due, to said Fordice. It is especially understood and agreed that this contract is not, in any way, to affect the remedy that said Fordice now has against me on any notes whatever.   Same not to be sold under market prices.

   " Dated this 17th day of December, A. D. 1885.

" G. S. Beeman."

   The appellees, finding the staves where they had been placed by Beeman, claimed them under their contract and took and used or disposed of them as their own.   The prin-cipal controversy is over the construction to be given to the contract between Beeman and the appellees.

   The appellant insists that the contract was executory, and that the appellees never acquired any title to the staves in controversy, while the appellees insist that by its terms the title to all the timber from which the staves were made was vested in them, and that the staves, as fast as they were manufactured, became their property.

   The contract is for the sale of an article to be manufac-tured.   Such contracts are executory, and ordinarily no title passes until the thing is completely done and notice given to the vendee, or some act done by the vendor designating

it as the article sold, either by setting it apart, marking it, or some other similar act. Benj. Sales, Am. notes, sections 352–357; *First Nat'l Bank, etc.*, v. *Crowley*, 24 Mich. 492; *Ballentine* v. *Robinson*, 46 Pa. St. 177; *Moline Scale Co.* v. *Beed*, 52 Iowa, 307.

Even in the case of articles manufactured expressly for a party, title passes only upon completion according to the contract and delivery, or tender of delivery. Benj. Sales, Am. notes, sections 358–384.

While this is the general rule, it is no doubt competent for the parties to fix, by their contract, a different time when the title will pass, and if it clearly appears from the contract that the parties intended the title to pass at any given time, or at any designated stage of the manufacture, or without any formal delivery or tender, such intention would no doubt govern.

The contract in question is for the sale of a certain number of staves *of the vendor's first manufacture,* of certain kinds. This is equivalent to saying that out of the staves of that kind first manufactured by the vendor shall be selected, or designated, the given number sold. It does not provide that the first 400,000 of one kind, or the first 300,000 of the other kind, shall be taken, but they are to be of the first manufacture.

Manifestly, something was necessary to designate, or indicate, before it could be said that any given staves or lot of staves passed under this contract. So far as this provision of the contract is concerned, it is clearly within the principle laid down in *Commercial, etc., Bank* v. *Gillette,* 90 Ind. 268, and other cases decided by this court, both before and since that time, following the same rule.

The case of *Martz* v. *Putnam,* 117 Ind. 392, cited by the appellees as being decisive of the question in their favor, lends no support to their contention. The contract there considered was, like this, for the purchase of articles to be manufactured by the vendor. Lumber of certain kinds and

dimensions was to be sawed and piled on sticks in the vendor's lumber yard and was there to be paid for, but was to be afterwards shipped by the vendor at the instance of the vendee. The lumber was sawed and piled according to contract, and invoices being furnished, the vendee stating the amounts and the price, it was all paid for. The piling of the lumber on sticks and furnishing invoices of it was a sufficient identification and designation, and the title passed. In the case at bar, after the manufacture of the staves in controversy, but before anything had been done in the way of delivering them to the appellees, or of designating them as a portion of those sold to the appellees, Beeman sold and delivered them to the appellant.

Appellees contend, however, that, even if there was otherwise doubt as to their title, it is put at rest by the provision vesting in them title to all lumber and staves bought by Beeman until the contract was complied with. We are unable to see how this affects the question.

Assuming that the parties could thus transfer the ownership of the timber, the stipulation in the contract has no relation to any of the staves in controversy, which were manufactured from timber cut on Beeman's own land, and not from timber bought by him. The title to the land had been in Beeman for some months when the contract was made, and it is hardly possible that by the use of the words "timber and staves bought by me" the parties meant timber growing on Beeman's own land. However, even if we assume that they did, and that such stipulation was valid and effectual to transfer the title to the timber, how does this leave the parties? The contract is for 700,000 staves. Of this number 696,970 had been previously delivered, leaving only 3,030 to be delivered to complete the contract. The stipulation in the contract only assumes to vest the title to the timber in the appellees until the contract was complied with, and could, therefore, at the utmost only affect 3,030 of the 159,755 staves.

Fordice *v.* Gibson *et al.*

Upon the facts before us, and about which there seems to be little if any controversy, the verdict of the jury and judgment of the circuit court are clearly erroneous.

The court, at the request of the appellees, gave to the jury the following instruction :

"The contract read in evidence, between plaintiff and George S. Beeman in regard to the staves in controversy, is in legal effect only a chattel mortgage, and if it was not recorded within ten days after it was executed it is void and of no effect whatever as against Gibson & McDonald, and if Beeman did not own the staves mentioned, but Gibson & McDonald did, it is also void and of no effect against them for that additional reason."

To the giving of this instruction appellant objected and excepted, and it is assigned as error.

Assuming the legal effect of the instrument to be as stated the instruction is clearly erroneous. Recording is only necessary to the validity of a chattel mortgage when possession of the mortgaged chattels is not delivered to the mortgagee and retained by him. Section 4913, R. S. 1881.

Here the staves were delivered to the appellant, and were in his possession when taken by the appellees.

The judgment of the circuit court is reversed, at the costs of the appellees, with instructions to grant a new trial.

Filed Sept. 15, 1891.