HERRING MOTOR COMPANY *v*. AETNA TRUST AND SAVINGS COMPANY, RECEIVER.

[No. 12,397.   Filed November 18, 1926.   Rehearing denied February 3, 1927.   Transfer denied February 17, 1928.]

*Herbert E. Wilson* and *Jacob Morgan,* for appellant.
*Ralph Bamberger* and *Isidore Feibleman,* for appellee.

NICHOLS, J.—Appellant, by its amended claim and petition for priority filed with appellee, sought to recover, as appellant says, certain shock absorbers shipped by it to the Burpee-Johnson Company, to be exchanged for certain other products manufactured or to be manufactured by said company, and, in the event that said shock absorbers could not be delivered, then to recover the value thereof.

The original claim was filed by appellant and allowed by appellee as a general claim; the amended claim and petition for priority was disallowed by appellee. There was an answer in denial, a trial by the court, and a finding and judgment for appellee, from which, after motion to modify and a motion for new trial had been overruled, this appeal is taken.

The respective rulings mentioned are assigned as error.

The amended claim is, in substance, that prior to June 16, 1923, appellant purchased and received from

the Burpee-Johnson Company a quantity of automobile accessories, worth to exceed $5,300. That thereafter, pursuant to an agreement between said company and appellant, a part of said purchase, of the value of $5,226.75 was duly returned to and received by Burpee-Johnson Company from appellant; that thereafter, other goods, consisting principally of auto accessories and equipment (but no shock absorbers) theretofore purchased from said company by appellant were, pursuant to the aforesaid agreement, also returned to and received by said company, of the value of $97.64, making a total value of goods returned of $5,324.39; that, pursuant to said agreement, said company agreed to deliver to appellant an equivalent amount of other automobile accessories and equipment, and particularly steering wheels, oil gauges and foot accelerators, being automobile products manufactured, sold and distributed by the said company; that thereafter, pursuant to said agreement of exchange, the said company did deliver and receive credit for merchandise in the total amount of $2,246.50; that after making such shipments to appellant, there was still due it from said company in merchandise, steering wheels, oil gauges and foot accelerators of the value of $3,077.89 and that, prior to the appointment of a receiver herein, the said company informed appellant, and appellant was led to believe, that said company had in its possession and had and held for and on account of appellant the said property due and belonging to appellant under said exchange agreement subject to its orders; that said company failed to make shipment to appellant pursuant to said exchange agreement of said automobile accessories and appliances of the value of $3,077.89, due and belonging to it, and it says, upon information and belief, that the said company, or appellee receiver, sold or otherwise disposed of said property belonging to or owned by appellant of the value

of $3,077.89 without the knowledge, authority or consent of appellant, although demand for such property was duly made upon said company and upon appellee receiver; that by reason of the foregoing, appellant is entitled to have its said claim declared and held to be a prior and preferred claim in the receivership, or that said receiver be ordered and directed by this court to deliver to appellant the said property which said company had agreed to deliver to it, pursuant to said exchange agreement as aforesaid, and, upon failure of said receiver to so deliver said property of appellant to it, that the value of said property, $3,077.89, be held and declared to be a preferred claim against the property and assets of this trust.

It is difficult for the court to determine from the language of the amended claim whether appellant sought to recover for shock-absorbers shipped by it to the Burpee-Johnson Company or their value, or for merchandise, steering wheels, oil gauges and foot accelerators, promised in return for the shock-absorbers, all of the value of $3,077.89, the quantity or value of each class of goods to be shipped on orders not having been determined. The original claim upon which the allowance of $3,077.89 as a general claim was made is not in the record, but it appears from a letter written by appellant that it was made up of credit memoranda issued by the Burpee-Johnson Company to appellant. There is no controversy as to the amount of the allowance, the only questions being whether, under the facts, which are substantially uncontroverted, the claim should have priority as a preferred claim. It appears by the evidence that appellant had purchased from the Burpee-Johnson Company a large consignment of shock-absorbers which, under conditions which arose after the purchase, it was unable to dispose of. After some negotiations, there was an agreement entered into by which

the Burpee-Johnson Company agreed to take back the shock-absorbers and to give other merchandise in exchange therefor, as appellant needed it. Upon receipt of notice of shipment of the shock absorbers, on May 31, 1923, the Burpee-Johnson Company wrote appellant that "just as soon as this shipment comes in we will send you a credit memorandum per our agreement, for which you are to take wheels or other products covering the entire amount." The credit memorandum was afterward sent. At this time, some merchandise consisting of oil gauges and steering wheels was ordered by appellant, and shipped by the Burpee-Johnson Company. On September 14, 1923, another order was made consisting of accelerators and steering wheels, which order was filled. It appears by the amended claim that the Burpee-Johnson Company shipped merchandise to appellant as many as seven different times. On October 5, 1923, the Burpee-Johnson Company informed appellant by letter that it still had a merchandise credit of about $3,000 and requested further shipping instructions at once. A similar letter was written November 19, 1923, urging shipping instructions on wheels, oil gauges, foot accelerators, "or on whatever else was needed." On December 4, 1923, appellant wrote the Burpee-Johnson Company to the effect that it needed nothing at that time, and asking that the matter be allowed to rest until appellant was in further need. On December 6, 1923, the Burpee-Johnson Company acknowledged receipt of appellant's letter, stating that it would like to have the matter straightened up so as not to have to carry it over into the new year. Another letter by the Burpee-Johnson Company, dated January 29, 1924, requested shipping instructions. The last two letters were unanswered. On March 6, 1924, appellee was appointed as receiver, at which time there was no merchandise on hand, all of

it, including the shock-absorbers returned, had been sold. There was then only the machinery and equipmint, and some raw material on hands. There was no cash.

To sustain appellant's contention that, under its amended claim, it is entitled to priority as a preferred creditor, we must do so upon the theory, either that the title to the shock-absorbers returned did not pass to the Burpee-Johnson Company, except at such times as goods were shipped by the Burpee-Johnson Company to appellant on its orders, and then only in the amount cf the value of the merchandise so shipped, or that, upon receipt of the shock-absorbers returned, title to such goods as appellant chose thereafter to order immediately vested in appellant. In either event, the Burpee-Johnson Company would have converted and disposed of appellant's property, which was not a part of the assets of the company, and appellant would have been entitled to a preferred allowance. But we cannot adopt either theory. There was a definite value fixed by the parties on the shock-absorbers returned, for which the Burpee-Johnson Company issued to appellant a credit memorandum, which was to be thereafter discharged by shipment of such merchandise as appellant might order from time to time in the total amount of the value of the goods returned. Under such circumstances, the rule that prevails as to the character of the transaction is thus stated in 23 C. J. 185: "It has been stated broadly, either specifically or substantially, that where there is a transfer of property for property other than money the transaction is an exchange, and that where the transfer is for money the transaction is a sale, but it has been generally held, where the question has arisen, that any transaction whereby property is parted with for a valuable consideration, whether there be a money payment or not, provided the bargain is made

and the value measured in money terms, and paid or agreed to be paid in something which the parties agree to treat as a specified amount of money, is a sale, but that where property is transferred for property, no price being set upon either piece, the transaction is an exchange, and the distinction has been recognized in the case of a transfer of personal property for other personal property, or of real property for other real property." Numerous authorities are there cited to sustain the rule.

Here there was no exchange of property for property without regard to value, but there was a transfer of about $5,000 worth of property for that value of other property not definitely described or designated, some of it not yet manufactured, and the same to consist of such goods as appellant might thereafter order. Such a transaction did not constitute an exchange of property within the meaning of the definition above set out, but was a sale of property back to the Burpee-Johnson Company, for which payment was to be made in merchandise as appellant might order, the kind and quantity of which had not yet been determined. *Westfall* v. *Ellis* (1919), 141 Minn. 377, 170 N. W. 339; *Baltimore, etc., R. Co.* v. *Western Union Tel. Co.* (1917), 241 Fed. 162; *Gill* v. *Eagleton* (1922), 108 Nebr. 179, 187 N. W. 871; *Fagan* v. *Hook* (1907), 134 Iowa 381.

There being a sale and delivery of the shock-absorbers back to the Burpee-Johnson Company, it follows that the title thereto passed to the company. As to the merchandise to which appellant was entitled in place of the shock-absorbers returned, the contract was clearly executory on the part of the Burpee-Johnson Company. The kind of merchandise, and the quantity of each kind had not been determined. The price to be paid was not agreed upon, and it clearly appears that some, if not all, of the merchandise was not

then manufactured. It is a well-established rule of law that where the goods are yet to be manufactured, or anything remains to be done to them to determine the price, quantity, or kind of goods, or to determine the time of delivery, precedent to delivery, the contract is executory, and ordinarily the title to the property does not pass. Benjamin, Sales 151, 152, 221, 222. *Fordice* v. *Gibson* (1891), 129 Ind. 7, 28 N. E. 303; *Coddington* v. *Turner, Rec.* (1923), 85 Ind. App. 604, 139 N. E. 323.

Upon either theory of its amended claim, appellant can recover only as a general creditor. Appellant relies largely upon the case of *Jewett & Sherman Co.* v. *Tindall, Rec.* (1922), 77 Ind. App. 681, 134 N. E. 501, which it contends is so much like the instant case as to justify invoking the rule of *stare decisis*. But the facts in that case are so different from the facts herein that we do not think it at all in point.

Judgment affirmed.