STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, PLAINTIFF, V. CENTRAL PURCHASING COMPANY, DEFENDANT.

FILED APRIL 19, 1929. No. 26475.

*O. S. Spillman, Attorney General, George W. Ayres* and *T. J. McGuire,* for plaintiff.

*Daniel J. Gross, Smith, Schall, Wright & Sheehan* and *Harry L. Welch, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON and EBERLY, JJ., and REDICK and SHEPHERD, District Judges.

GOSS, C. J.

This is an original action in the name of the state of Nebraska, on the relation of O. S. Spillman, then attorney general. The purpose of the action was to enjoin and oust the defendant, a nonresident corporation, from doing business in this state. The issues requiring evidence to be taken, the court appointed Honorable L. J. Te Poel, of Omaha, as referee, with instructions to take evidence and to report the same to this court, together with his findings of fact and conclusions of law. Upon the referee's report the defendant filed its exceptions and the case was duly briefed and orally argued to the court.

The referee found that the defendant was a corporation foreign to Nebraska, probably originally incorporated under

the laws of Delaware; that it complied with the laws of Nebraska in the matter of appointing a resident agent, as required of foreign corporations in this state; that it did business in Omaha from some time in the fall of 1926 until this suit was commenced in March, 1928; that numerous parties in that period went to its office and obtained money from it on assignments of wages or salary, the total number of transactions being approximately 11,000; that the form of instrument (set out in the evidence) executed by the party obtaining money is in two parts, separated by a perforated line, the upper part purporting to be an application to the defendant to purchase wages or salary "already earned," the lower part purporting to be an assignment of these wages or salary; that in every instance, save one as to one employee, in evidence, the party obtaining money from the defendant drew his wages or salary in person on payday and brought to defendant an amount 10 per cent. in excess of what he had obtained, and that in the case of one employee, who obtained semi-monthly larger amounts than the usual transactions showed, there was brought back 8 per cent. more than the amount obtained from the defendant; that there was no serious attempt on the part of defendant to collect from the employer on the instruments; that, in several hundred transactions with employees of the Union Pacific Railroad Company, notice of assignment was given in only three or four instances; that it does not appear that any suit was ever brought, or any legal remedy resorted to, against the employer if the employee failed or refused to come in with the money after he drew his pay covered by the instrument he had signed; that the record shows the railroad employees in Nebraska are paid twice a month (as required by section 5389, Comp. St. 1922), and that many railroad employees obtained money from defendant twice a month over a period of several months, each time closing the previous transaction, thus returning each month a total of 20 per cent. in excess of the actual money obtained from defendant; that the manager of defendant testified that he considered it the duty

of one obtaining money on an instrument to deliver the money which the instrument called for; that when the money was paid the instrument was stamped "Delivered" but was retained by defendant; that the defendant company advertised that these transactions by which railroad men could obtain money were "strictly confidential," the advertisement in evidence further showing: "Quick money for railroad men, no collateral required, no indorsement, no mortgage."

In addition to the findings of fact the referee concluded as matters of law: (1) That the defendant is a foreign corporation doing business as such in Nebraska; (2) that the transactions had by the defendant company amounted to loans and not to sales; (3) that the defendant violated the positive laws of the state by charging interest at the rate of more than 10 per cent. per annum, in that it charged 20 per cent. a month, and that it has therefore forfeited its right to do business in the state; (4) that no right of the defendant guaranteed by the federal Constitution is violated by the enactment and enforcement of the usury laws of the state; that the state laws provide a reasonable classification, provide no distinctions, and in no way discriminate against the defendant because it is a foreign corporation; (5) that this is an action in equity, and that the court may properly grant an order enjoining the defendant from continuing to do business in the state; because defendant has so little property that can be reached, the referee sees no practical occasion for the appointment of a receiver and does not recommend such an appointment.

The report of the referee is a thorough statement of the facts shown in the evidence and a learned presentation of the law from which his conclusions are derived.

The exceptions of defendant are many, but its brief and argument narrow the propositions of law to two. The first is: "The buying of earned salaries or wages at a discount is not the loaning of money and is not a violation of the usury laws of the state of Nebraska." Heading the long list of citations under this proposition is section 2845, Comp.

St. 1922. This section, in its present form, was adopted in 1915. It makes it unlawful for any person, firm, partnership or corporation to engage or continue in the business of making loans or of purchasing or making loans on salaries or wage earnings at a greater rate than 10 per cent. per annum. Defendant says this statute was copied word for word from the Ohio statute, and that it is fundamental that, when we adopt a statute in its entirety from a sister state, we also adopt the decisions of that state with respect to the interpretations of the statute. Therefore, our attention is directed by defendant to the case of *State v. Mehaffey,* 112 Ohio St. 330, involving the same type of contract as in the instant case. There the supreme court of Ohio held that the relations created by the transaction are not those of creditor and debtor, but of buyer and seller, to which the question of interest has no relation; that the subject of discounts is not dealt with, and that, if the practice of the defendant requires supervision, it is a question for the legislative branch and not for the courts. Conceding the influence, but not the entire control, of previous interpretations of a statute adopted from a sister state, we note that the Ohio case was decided April 14, 1925. This was ten years later than the adoption of our statute, upon which defendant seeks to fasten the interpretation. It is to be noted, also, that the Ohio statute seems to have been interpreted by that court in the light of other statutes. The subsequent interpretation by the Ohio court could not of course have been adopted when our legislature enacted the statute, nor in adopting the statute itself was the legislature or this court consenting to be bound by any interpretation that might thereafter be put upon the statute by the courts of the state from which the statute was adopted.

A considerable proportion of those who obtained money from the defendant were married men and heads of families. No instrument in evidence, so far as we discover, shows that, when any of the borrowers were heads of families, the signatures of their wives were obtained nor that the instruments were acknowledged. Section 2459, Comp.

St. 1922, provides: "Every contract or agreement for the sale, assignment of the wages or earnings of the head of a family shall be void unless such contract, agreement, assignment or transfer shall be executed and acknowledged by both husband and wife in the same manner that conveyances of real estate are required to be signed and acknowledged by the laws of this state."

The defendant set out in its brief the blank form of instrument as typical of those used, and there are many executed ones in the record. None of these have any place for the execution and acknowledgement by husband and wife required under the section quoted. It is evident that in all such cases the defendant was violating a positive statute. All the circumstances are for consideration in determining defendant's attitude to the well-known public policy and spirit of the law and in an analysis of the question as to whether the defendant was seeking by evasion and by indirection to make an usurious loan under the guise of purchasing a right of action.

In the case of *Tennessee Finance Co. v. Thompson,* 278 Fed. 597, the facts were very similar to those here. The court held that it was the settled rule to look through the forms adopted to evade the usury laws and to ascertain as a fact whether it was a good faith sale or a loan at usurious interest. There it was held to be a loan and not a sale.

In *McWhite v. State,* 143 Tenn. 222, the defendant was convicted of usury and prosecuted appeal in error to the supreme court. The transaction was with a railroad employee on plans similar to those of the defendant in the case involved in this opinion. The court held that the defendant's plan was clearly "an extension of credit, an advance, or loan, to the employee, with the assignment held over the employee as a sort of club or collateral security."

"A loan of money is the delivery by one party and the receipt by the other party of a given sum of money, upon an agreement, express or implied, to repay the sum loaned, with or without interest." 38 C. J. 126, sec. 1.

"Goods" does not mean "money" nor "things in action," but the analogy is valuable. In our Uniform Sales Act, which relates to goods, a sale is defined as follows: "A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." Comp. St. 1922, sec. 2470.

"A sale is a transfer of the absolute or general property in a thing for a price in money, which the buyer pays or promises to pay for the thing bought and sold." 23 R. C. L. 1186, sec. 2.

The courts in such a case as this are not bound by forms but will look beyond form to the real substance. Looking through the scheme of the defendant to acquire and retain an unlawful and usurious rate of interest for the use of its money, and discerning the real substance of its transactions, we are of the opinion that its transactions pictured in the evidence were not *bona fide* purchases of rights of action from its customers, but rather were loans of the defendant to its customers. As such they were strongly infected with usury, were unlawful, and were contrary to the public policy of the state.

The defendant's second proposition is: "A foreign corporation cannot be ousted from doing business within a state unless it has violated a law or laws of the state which carries with it the right of ouster, or unless it be a matter of public concern."

The answers to this proposition need not take much time nor space. The defendant has, as demonstrated by the evidence, habitually violated the laws of the state, and it is a matter of public concern that all persons within the state shall be protected from a continuation of those acts. For authority we quote from a comparatively recent opinion: "The rule is settled in this state that foreign corporations do business here as a matter of comity and not as a matter of right. The privilege extended to a foreign corporation may be revoked at the pleasure of the state, and *quo warranto* proceedings brought by the attorney general in the name of the state is one of the proper proceedings to cancel

or annul the privilege. *State v. Standard Oil Co.*, 61 Neb. 28; *State v. Nebraska Distilling Co.*, 29 Neb. 700." *State v. Brictson Mfg. Co.*, 113 Neb. 781. The syllabus in the *Brictson* case says: "When a foreign corporation licensed to do business in Nebraska violates the law or fixed policy of the state, it may be ousted therefrom in an action of *quo warranto* by the attorney general in the name of the state." Under section 9280, Comp. St. 1922, the petition filed herein is a sufficient information to support a judgment against the defendant, ousting it from exercising its rights and privileges as a corporation within the state.

It is the opinion of the court that the exceptions of the defendant to the report of the referee should be overruled, that the report of the referee should be adopted, and that the defendant should be ousted from continuing to do business as a foreign corporation in this state.

EXCEPTIONS OVERRULED, AND WRIT OF OUSTER ALLOWED.