In the Matter of the Estate of ANTON D. DIMOU, Deceased.

Surrogate's Court, Kings County, October 4, 1933.

*John J. Hanrahan,* for the petitioners.

*Thomas J. Snee,* for the public administrator.

WINGATE, S. This is an application for permission to issue executions on two judgments recovered against the public administrator in his official capacity as fiduciary of this estate. The petition alleges a written demand for payment of the claims made upon the respondent in February, 1930, the subsequent institution of an action against him, recovery of the judgments herein questioned and their affirmance by the Appellate Division, demand of payment thereof and failure to pay. It further alleges that the demand and institution of suit were prior in time to the payment by the respondent of property of an agreed value of $153,286.54 to distributees of the intestate, and that the respondent has in his hands $30,000 of the assets of the estate. None of these allegations are denied in the answering affidavit of the public administrator, the only relevant affirmative matter therein contained being that when certain " deliveries in kind " were made to the representative of the sole distributee, the fiduciary retained a sum sufficient to cover all known outstanding claims, but that since then, a suit on an additional demand for $27,000 had been brought against him.

It is a familiar principle of law that the debts of a decedent are

postponed only to funeral and administration expenses and have a priority over all distributive interests. (*Matter of Smallman,* 138 Misc. 889, 892, 910, and cases cited.)

Section 212 of the Surrogate's Court Act directs that " Every * * * administrator must proceed with diligence to pay the debts of the deceased." The word " debts " is defined to include " every claim and demand, upon which a judgment for a sum of money, or directing the payment of money, could be recovered in an action " (Surr. Ct. Act, § 314, subd. 3).

It is, of course, obvious that a debt, as thus defined, differs from a mere claim, the distinction being that a debt is a claim, the justice of which, as a valid obligation of the estate, has been definitely established.

The preferences among debts, or to employ the alternate phraseology, proved claims, is established by the provisions of section 212, but so far as is pertinent for the development of the present discussion it need only be noted that judgments docketed against the deceased in his lifetime are preferred in payment over those which result by reason of suits instituted against his personal representatives after his death. The latter are classified on no higher plane than any simple obligation which has not been reduced to judgment. The distinction is no doubt due partly to historical considerations and partly to the equitable nature of the surrogate's jurisdiction. From time immemorial a judgment *inter vivos* has been considered an obligation of a higher nature than a simple contract debt, no doubt because of the fact of its greater ease of enforcement. A judgment procured against an estate representative in his official capacity, however, lacks this essential characteristic, since, by reason of the impounding of the assets of the estate within the jurisdiction of the surrogate with whom " equality is equity," it is not capable of summary enforcement where such action would result in comparative detriment to others having rights of equal moral validity.

The recovery of a judgment against a personal representative, therefore, results merely in the transformation of the claim into a " debt " within the terminology of the act. It is merely one method provided by the statute (Surr. Ct. Act, § 211) for the establishment of the right of its holder to distribution of the assets of the estate *pro rata* with others in a similar situation. From this standpoint, it is immaterial whether the proof effecting the transformation of the claim into a " debt " takes place in the Surrogate's Court itself or is adduced by means of the permitted alternative process of suit in a court of general jurisdiction. The goal attained by either road is the same and is the establishment of the obligation as a

charge upon the assets of the estate co-ordinate with other obligations of the same class which must be paid subject only to the other, higher obligations expressly preferred by statute.

Midway between a claim reduced to a judgment ·obligation against the decedent in his lifetime and one which is still open and the judicial enforcement of which has not been attempted prior to his death, is the variety of obligation in which suit has been brought against the decedent prior to the death, but judgment has not been entered in his lifetime, but is entered against him subsequently. This is the situation which is regulated by the second sentence of section 478 of the Civil Practice Act, the status of such a demand being that such a judgment " establishes a debt to be paid in the course of administration; " in other words, it becomes an established claim giving rise to rights of payment identical with those possessed by an ordinary claim established either before the surrogate or in a court of general jurisdiction pursuant to the provisions of section 211 of the Surrogate's Court Act.

The next question relates to the manner of enforcement of the debt which has been established as a valid adjudicated claim by any of the methods hereinbefore considered and the machinery which must be set in motion in order to compel the fiduciary to make satisfaction thereof from the assets of the estate.

The methods of enforcement differ, depending on the forum in which the claim has been transformed into an adjudicated debt. If this has taken place in the Surrogate's Court, it is accomplished at the time of the judicial settlement of the accounts of the fiduciary (Surr. Ct. Act, § 211), and payment is directed in the decree which is to be entered thereon. A claimant electing to proceed by this method may compel a judicial settlement of the accounts of the fiduciary at any time after the expiration of seven months from the date of issuance of letters (Surr. Ct. Act, §§ 258, 259), and obtain an adjudication of his rights, and, in the ordinary case, payment of his debt, if established, *pari passu* with others possessing rights of equal grade. The decretal direction of payment to the creditor is both a docketable judgment ·(Surr. Ct. Act, § 81), enforcible by execution (Surr. Ct. Act, § 83), and is also enforcible *in personam* by proceedings to punish the fiduciary for contempt. (Surr. Ct. Act, § 84.)

Where the debt has been established in a court of general jurisdiction, the creditor may, at his election, pursue the same remedies for enforcement hereinbefore considered or may apply to the surrogate for leave to issue execution against the fiduciary pursuant to the provisions of sections 151 and 152 of the Decedent Estate Law.

The purpose of this prerequisite of permission before proceeding against the estate assets in the hands of the fiduciary is obvious, and is to prevent the possibility of any person obtaining a preference in payment over others possessing debts entitled to equal consideration. Two affirmative demonstrations are required of the creditor seeking this relief, namely, *first*, that the assets which are or should be in the hands of the fiduciary are sufficient to satisfy the debt upon which execution is sought; and, *second*, that the payment thereof, pursuant to such execution, will not reduce the assets which are or should be in the hands of the fiduciary to a point which would prevent other creditors possessing equal rights from receiving the same measure of relief. The determination of such an application resolves itself, therefore, largely into an inquiry respecting the assets which have come into the hands of the fiduciary and the claims, paid and unpaid, against the estate. Where any doubt exists on the pertinent points, it is competent for the surrogate to require an accounting to determine the relevant conditions. (*Matter of Congregational Unitarian Soc.*, 34 App. Div. 387, 389.)

On primary principles, it is obvious that if a deficiency of assets exists solely by reason of misapplication by the fiduciary of funds of the estate which have come into his hands, this will be insufficient to defeat the right of the creditor to immediate payment. (*Matter of Gall*, 40 App. Div. 114, 116; *Matter of Warren*, 105 id. 582, 588.)

The application of these principles to the case at bar is obvious. The respondent has admitted that he distributed certain assets of the estate to the next of kin and has failed to deny that their worth was over $155,000 as alleged in the petition. Until such time as all claims of creditors were satisfied or he was relieved from his trust, he was a trustee primarily for creditors and could recognize any of the deferred rights of distributees only at his peril. As to creditors whose rights were prejudiced by his act, any distribution was a clear misapplication of the funds of the estate, within the language of the decisions. Had this act not been committed, the funds in his hands would have been in excess of the claims of all creditors. His act in making such distribution cannot defeat the established debt of this creditor. Were the question presented upon the judicial settlement of his accounts, he would be surchargeable with so much of the amount of any distributive payments as rendered it impossible for him to pay in full those having prior rights. No different rule can be applied to the present situation. It follows that the application to issue execution on the judgments specified in the petition must be granted.

Proceed accordingly.