In the Matter of the Estate of CHARLES FRANKS, Deceased.

Surrogate's Court, Kings County, February 13, 1935.

*McCanliss, Coutant & Hinch,* for Stanley Gray Horan.

*Edward K. Kennedy,* for Charles H. Franks Corporation and others.

*William A. Kirk,* special guardian for Jean Marble and five other infants.

*Elizabeth C. Conley,* in person.

WINGATE, S. The present proceeding by a substituted trustee, while designated as one for construction of the will, is also, in substance, alternately for advice and direction.

The will in question was probated in 1870, and directs that the remainder be divided into as many shares as testator shall leave surviving children, one share being held in trust for each child, with income payable to it for life and remainder to its issue. According to the uncontroverted allegations of the petition, the testator was survived by seven children, six of whom are now dead, the sole survivor being Elizabeth M. Franks. It follows that the remainders of six of the seven parts into which the estate was originally divided have now vested.

The chief assets of the estate consisted of four parcels of real property located in the boroughs of Manhattan and Brooklyn and these are still jointly held by the assignee of all except one of the remaindermen, the trustee for the seventh and last continuing trust, and the one remainderman who has not assigned her interest.

The majority of the remaindermen have caused a corporation to be organized for the control and management of their interests. This corporation is now the owner in fee of an 1866/2520ths undivided interest in the properties plus a life estate in a portion of the one-seventh interest still held in trust, plus a fractional remainder interest in this trust portion. The legal title to a one-seventh undivided interest is, as stated, held by the petitioning trustee, and the remaining interest, consisting of a 204/2520ths interest in fee, plus a fractional remainder interest in the property held in trust, is held by Elizabeth C. Conley, who has declined to assign her interest to the corporation or to join with the other legal owners representing the major portion of the six-sevenths of the estate which has vested in possession.

The present trustee seeks the approval by this court of a transfer by him to the corporation of the one-seventh undivided interest to which he holds legal title, in return for the issuance to him of a proportionate amount of its capital stock. This action is strongly opposed by Miss Conley, but is advocated by all other interested parties.

Authority for the adoption of this course is attempted to be read into the terms of items " sixth " and " seventh " of the will. So far as possibly pertinent, these provide:

" *Sixth*. I authorize said executors to compound, compromise, and settle all or any claims or debts by or against my estate, upon such terms as they shall deem to be expedient.

" *Seventh*. I authorize said executors to sell all or any part of my said real estate, at public or private sale, and to give good and sufficient deeds therefor.   *   *   *

" I direct said executors to invest the funds to be held in trust by them as above directed in productive real estate, or upon Bonds and Mortgages, or in Stocks of the United States, or of the Cities of New York or Brooklyn. I also authorize said executors to make partition for the purposes above named of all or any part of my real or personal estate."

The provisions of item " sixth " are patently wholly irrelevant to the questions presently propounded.   " Debts " and " claims " are words of well-defined meaning when applied to the affairs of an estate. The latter term signifies an asserted but unadjudicated obligation, whereas a claim is transformed into a debt after its

judicial establishment. (*Matter of Dimou*, 149 Misc. 83, 85.) In the present situation there is no semblance of either, since no one has advanced any contention of the existence of any obligation of any variety against the assets of the estate.

The question of testamentary authority of the trustee to exchange the undivided interest of his trust in the real property for a minority stock interest in a corporation depends wholly upon the phraseology of item " seventh." The sole power there given is " to sell."

Bouvier's Law Dictionary (Baldwin's Rev.), page 1082, defines a " sale " as " an agreement by which one of two contracting parties, called the seller, gives a thing and passes title to it, in exchange for a certain price in current money, to the other party, who is called the buyer or purchaser who, on his part, agrees to pay such price," citing 2 Kent's Commentaries, 363, as authority.

The contribution of Corpus Juris in this connection (55 C. J. 36) reads: " ' Sale ' in legal nomenclature, is a term of precise legal import, both at law and in equity, and has a well defined legal signification, and has been said to mean, at all times, a contract between parties to give and to pass rights of property *for money*, which the buyer pays or promises to pay to the seller for the thing bought or sold." (Italics not in original.)

The authorities attributing a consonant connotation to the term as implying a conveyance *for money* are literally legion. A few of these may be worthy of citation. (See *Madison Ave. Baptist Church* v. *Baptist Church in Oliver Street*, 46 N. Y. 131, 140; *Ewers* v. *Weaver*, 182 Fed. 713, 714; *Alcorn* v. *Gieseke*, 158 Cal. 396; 111 P. 98; *Herring Motor Co.* v. *Ætna Trust & Sav. Co.*, 87 Ind. App. 83; 154 N. E. 29, 31; *Commonwealth* v. *Davis*, 12 Bush [75 Ky.], 240, 241; *Puryear-Meyer Grocer Co.* v. *Cardwell Bank*, [Mo.] 4 S. W. [2d] 489, 490; *State ex rel. Spillman* v. *Central Purchasing Co.*, 118 Neb. 383; 225 N. W. 46, 48; *Brown* v. *Fitz*, 13 N. H. 283, 284; *Colgan* v. *Farmers' & Mechanics' Bank*, 59 Ore. 469; 114 P. 460, 464; *Lumpkin* v. *Wilson*, 52 Tenn. 555, 558; *Ex parte Beaty*, [Tex.] 1 S. W. 451, 452.) As is pointed out in *Northern Pac. R. Co.* v. *Sanders* (47 Fed. 604, 606), the idea of a consideration of money or its equivalent is a necessary element of a sale, " as opposed to a barter and exchange or gift."

That the testator, in granting only an authority " to sell " to his fiduciaries had this idea in mind, is additionally supported by the limitations which, in the same item of his will, he imposed on their powers of reinvestment. This was authorized only in productive real estate, bonds and mortgages or specified varieties of governmental obligations. Were the trustee to effect the exchange which he contemplates, and if by some wild stretch of

the imagination it could be considered a sale, he would, in effect, be contemporaneously reinvesting the funds of the estate in an unauthorized and, therefore, directly prohibited manner. It follows, in the opinion of the court, that the testamentary language is incapable of interpretation in the manner advocated by the trustee.

There remains for consideration the appeal to the equitable powers of the court to override the express directions of the testator and authorize performance of the act in question. It is unquestionable that the surrogate has been granted a broad equitable jurisdiction by the enlightened legislation of the past twenty years and this court has prided itself on being among the foremost to utilize the broadened functions thus accorded it. In many respects these powers have placed it on a parity with the Supreme Court in respect to the particular classes of litigation intrusted to it. This court has, however, never laid claim to the possession of authority transcending that of the Supreme Court and it would deem such an act savoring of the greatest temerity.

In a situation such as is here disclosed, the Supreme Court, under the provisions of section 116 of the Real Property Law, would be powerless to grant the relief sought, since an adult beneficiary of the trust and a co-owner of the property opposes the action.

The policy of the law in this connection having been expressly determined by the Legislature by its denial of authority to the highest *nisi prius* tribunal of the State, this court will not commit the absurdity of arrogating to itself the authority to authorize such an act.

It follows that neither under the terms of the will nor by the application of general principles of law is this trustee authorized to exchange his interest in this property for stock in the corporation.

Enter decree on notice.