REQUESTED BY: Senator Rod Johnson Nebraska State Legislature 804 State Capitol Building Lincoln, NE 68509
Dear Senator Johnson:
You have asked whether or not a feed lot operator who custom or contract feeds livestock other than his or her own must hold a valid registration or license pursuant to54-820.01(1), R.R.S., 1943, and pursuant to REQ 0088 which you attached to your letter.
In relation to the requirements of § 54-820.01(1), it provides in part that `No person shall manufacture or distribute commercial feed in this state unless such person holds a valid registration for each manufacturing and storage facility in this state. . . .' Commercial feeds are defined in § 54-820(4) as `. . . all materials which are distributed for use in feeding animals other than man.' Distribute is defined in § 54-820(2) as `. . . to offer for sale, sell, barter, or otherwise supply commercial feeds.'
In an effort to understand the situation presented by your letter, the Department of Agriculture, which is charged with administering this set of statutes, was contacted. The department indicated that they have contacted other states in the region which have a statutory scheme similar to the one set forth above, and that none of the states require the registration of feed lot operators in the situation you have presented. Moreover, the department indicated that they were not aware of any problems either in this state or in any other states as a result of lack of registration.
The statutory scheme of which § 54-820.01 is a part, was originally enacted by LB 158 of the laws of 1951. Testimony before the Agricultural Committee on that bill indicated that it was directed at problems that the State of Nebraska was having because of it becoming a dumping ground for commercial feeds.
The bill was an attempt to stop the sale of feeds that do not measure up to the specifications set forth on labels attached to the feeds and to place more responsibility on feed dealers and manufacturers. There was no testimony before the committee directed to the operation of feed lots. Additionally, this section was amended by LB 224 of the laws of 1953, LB 91 of the laws of 1977, and LB 617 of the laws of 1983, but no testimony regarding any of those bills could be located that indicated either a change of intent or that the statute should be applied to feed lots.
In addition to this apparent lack of legislative intent to have the statute apply to the situation you have presented, the situation itself appears less like a sale or supply of feed and more like an agistment. An agistment is a bailment of animals for the purpose of grazing or pasturing. The situation you have presented appears to be a bailment of animals for the purpose of feeding, which is more like an agistment than a sale or supply of commercial feeds.
When the owner of livestock places them in the custody of a custom or contract feed lot operator, that owner is being predominately provided a service, and the transfer of the feed, which is fed to the livestock, is merely an incident to the contract between the owner and the operator.
A sale has been defined as `A transfer of the absolute or general property in a thing for a price in money, which the buyer pays or promises to pay for the thing bought and sold.' State ex rel. Spillman v. Central Purchasing Company,118 Neb. 383, 389 (1929). Additionally, the Uniform Commercial Code provides: `A `sale' consists in the passing of title from the seller to the buyer for a price.' U.C.C. § 2-106(1). Also `bartering' or `otherwise supplying' feed, as specified in the statute, would also suggest that the statute would apply only in the situation in which title to the feed is conveyed from one party to another. On the other hand, the situation you have presented involves a custom or contract feed lot operator entering into a contract with the livestock owner which provides for the feed lot operator to provide work, labor, and material but not title to the feed. A feed lot operator would be engaging in a conveyance of title if there was an agreement for a certain type and quantity of commercial feed to be provided for an agreed upon sum and at a set time.
Because the type of situation you have presented is presumed to not encompass a sale, barter, or otherwise supplying feed as that has been defined herein, the registration provision of § 54-820.01(1), R.R.S. 1943, would not apply to a custom or contract feed lot operator who feeds livestock other than his or her own. Additionally, because of the similar language and no indication of a change in legislative intent in the proposed legislation attached to your letter, it likewise would not apply to such feed lot operators.
We hope that this letter has been of some assistance to you. If we can be of any further service, please feel free to call upon us.
Very truly yours,
A. EUGENE CRUMP Deputy Attorney General
Leroy W. Sievers Assistant Attorney General